## NATIONAL LABOR RELATIONS BOARD v. CEN-TENNIAL COTTON GIN CO.

### No. 13573.

United States Court of Appeals Fifth Circuit.

Jan. 11, 1952.

Rehearing Denied Jan. 30, 1952.

Alice Andrews, Attorney, NLRB, David P. Findling, Assoc. Gen. Cnsl. NLRB, and A. Norman Somers, Asst. Gen. Cnsl. NLRB, all of Washington, D. C., G. Hume Cofer, Austin, Tex., for petitioner.

Wm. B. Spann, Jr., Henry J. Miller, Atlanta, Ga., S. E. Kelly, Jr., Columbus, Ga., for respondent.

Before HOLMES, BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board, seeking enforcement of its order requiring respondent to cease and desist from discouraging membership in the International Association of Machinists or any other labor organization of its employees by discriminatorily discharging or refusing to reinstate any of its employees or by otherwise discriminating in regard to their hire and tenure of employment; from interrogating its employees in any manner concerning their union affiliation, activities, or sympathies; and from in any manner interfering with, restraining or coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act.[1] The order further directed respondent to offer reinstatement to two employees and to make them whole for any loss of pay suffered by reason of the discrimination against them, and to post appropriate notices.

Specifically, the Board found that two well-timed general wage increases were granted by respondent during periods of union organizational activity with the purpose and for the intent of inducing its employees to refrain from joining or remaining members of the union in violation of Section 8(a) (1) of the Act; that respondent interfered with, restrained and coerced its employees by questioning them

1. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

with respect to matters of union concern in violation of Section 8(a) (1) of the Act; that respondent adopted and used employment application forms requiring the disclosure by prospective employees of their union affiliations in violation of Section 8(a) (1) of the Act; and that respondent, in violation of Section 8(a) (1) and (3) of the Act, discriminatorily discharged Wonza Welch and Willie R. Jernigan because of their membership in and activities on behalf of the union.

Insisting that the findings are wholly erroneous, respondent urges upon us that the order of the Board should not be enforced because, viewed upon the record as a whole, the findings are without legal support. We are not wholly in agreement with respondent's position. Our examination of the entire record leaves us in no doubt but that there is substantial evidence to support the Board's findings except as to the finding that respondent discriminatorily discharged Jernigan because of his membership and activities on behalf of the union.

■ Respondent contends that Jernigan was discharged because he welded an excessive number of defective sign bars. On the other hand, the Board found and is here insisting that the record fully supports its finding that Jernigan was discharged for union membership and activities. The record is silent as to Jernigan's union activities except for the fact that he attended an organizational meeting and was a member of the union, but many of his fellow employees were likewise union members and attended the same meeting and they were not fired. In short, Jernigan's union activity consisted only of his being a member of the union. It is apparent that the Board's refusal to credit the testimony of respondent's witnesses, to the effect that Jernigan was discharged because of the poor quality of his work, is bottomed solely on the fact that Jernigan was a good welder. Respondent does not deny this. Johnson, foreman of the Sheet Metal Shop, Gin Division, testified that Jernigan was a good welder but careless; Sanders, former superintendent of the Gin Division, was of the opinion that Jernigan did good welding on heavy structural work though his weld on light metal was not passable; McDonald, production manager in the Beverage Body Division, stated that Jernigan was a good welder but in view of the type of work which Jernigan did in his department he would not have rehired him had he applied for a job. Hindsman, superintendent of the Gin Division, characterized Jernigan as a good welder who had become careless. Hindsman also stated that if he had needed a welder at the time Jernigan applied for reemployment he would have hired him. All of these witnesses, however, testified positively and unequivocally that to their knowledge Jernigan had welded an excessive number of defective sign bars shortly before he was discharged. Jernigan had been a welder for the Gin Division, Sheet Metal Shop, under foreman Johnson and assistant superintendent Hindsman from 1944 until the first part of September 1947. Everyone agrees that, with minor exceptions, he always did a good job in the Gin Division. In September 1947, however, he was put to work welding sign bars for the Beverage Body Division under foreman Cosley and production manager McDonald. McDonald testified that respondent's president, A. R. W. Swope, had been urging him to increase the output of beverage bodies because customers were threatening to cancel their orders and he did not desire to have Swope place the blame on him for something which he regarded as the fault of another. Accordingly, he informed Swope that it was Jernigan's work which was cutting down production. Whereupon Swope told Sanders to fire Jernigan immediately. This testimony is entirely consistent with Jernigan being a good welder and the Board may not refuse to give effect to it. Jernigan may or may not have been turning out defective sign bars. The point is, Swope was told that Jernigan's work was defective and he ordered Jernigan fired. This positive testimony was uncontradicted in any respect and the Board's finding to the contra may not stand.

■ Finally, respondent complains that the trial examiner excluded certain evidence offered by respondent which tended to prove an absence of a background of

anti-union bias and also excluded evidence offered to prove that on October 1, 1947, the Regional Director of the Board advised respondent that no action would be taken on the union's representation petition until such time as the union complied with the provisions of Section 9(f, g, h) of the Act. This evidence was excluded on the ground that it had no relevance to any issue in the case since respondent was not charged with a refusal to bargain collectively in violation of Section 8(a) (5) of the Act. We think this evidence was properly excluded but even if it had not been excluded its reception could not possibly have effected the result in this case.

Enforcement of the Board's Order as to Jernigan is, therefore, denied. Except as to Jernigan, the Order of the Board will be enforced as written.