**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FONTAINEBLEAU HOTEL CORPORATION d/b/a Hotel Fontainebleau, Respondent.**

No. 18992.

United States Court of Appeals Fifth Circuit.
March 23, 1962.

Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee M. Modjeska, Atty., Stuart Rothman, Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., for petitioner.

Milton E. Grusmark, Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, Fla., for respondent.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a proceeding to enforce orders of the National Labor Relations Board.[1] Finding that respondent had unlawfully discharged an employee,[2] and that in the light of this discharge had unlawfully interrogated certain employees,[3] the Board has ordered respondent to reinstate the discharged employee, with back pay, and to cease and desist from further unlawful interrogation. Respondent, on the other hand, maintaining that dismissal of the employee in question was justified, contends that the conclusions of the Board are without basis in fact and that its orders are therefore unwarranted. We agree with respondent.

The dispute arises in the context of the labor-management relations existing at the Fontainebleau Hotel in Miami, Florida, in May, 1960. At that time, respondent had a consent contract with a union, covering certain classes of hotel employees. The union had attempted unsuccessfully to obtain respondent's acceptance of an interpretation of the contract which would have included the "Checkers and Cashiers", who were not specifically mentioned in the contract, within its coverage. It was therefore decided by union officials that an attempt would be made to achieve Board certification of the checkers and cashiers as a unit, and efforts were commenced to obtain the signatures of a majority of the employees in that unit on union cards.[4]

All of the acts of interrogation found by the Board to be unlawful occurred during the month of May, 1960. In that period, Kaufman, a supervisor, asked one employee if she had signed a union card, and was answered in the affirmative; he asked two others if they had joined the union, and received similar replies. These acts are admitted by respondent. One McCormick, the employee whose discharge the Board found to be unlawful, testified to the occurrence of the following conversation with Kaufman, after the latter had asked McCormick if he had joined the union and was told that he had:

"He [Kaufman] said, 'What are you mad at?' I said, 'I'm not mad at

1. Pursuant to Sec. 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq.).

2. Sec. 8(a) (3) of the National Labor Relations Act.

3. Sec. 8(a) (1) of the National Labor Relations Act.

4. For reasons not material to the case at bar, the efforts to obtain Board certification were discontinued on June 15, 1960.

663

anything.' I said, 'They have a terrific medical coverage for one thing which I need', and I said, 'besides I would like to have somebody represent me.' He said, 'Why don't you take out Blue Cross?' I said, 'The coverage with the union is much cheaper.' He said, 'They will still grab five bucks a month out of your pay.' "

According to McCormick's testimony, it was his impression that Kaufman then "stormed on down through the dining room." Kaufman denied that the conversation reported by McCormick ever took place.

Evidence adduced before the Trial Examiner reveals that McCormick had delivered union cards for signature to three persons, and had discussed the union with at least one other employee. There is no evidence, however, that anyone employed by respondent in a supervisory or management capacity was aware that McCormick had engaged in this small amount of union activity.

On the 15th of June, 1960, Kaufman, acting on orders from Novack, respondent's president, discharged McCormick. He was told that there had been a complaint about him, but Kaufman refused to reveal to him the nature of the complaint. Kaufman told McCormick at this time that his discharge would be listed as due to a reduction in force, so that he could draw unemployment compensation. Subsequently, on two occasions, in response to inquiries concerning McCormick's discharge from union representatives, Novack stated that the discharge was due to a reduction in force.

At the hearing before the Board, both Kaufman and Novack explained that McCormick's discharge was motivated by a belief or suspicion that he was engaged in dishonest or illegal activity in the performance of his duties as a cashier in the hotel coffee shop. The substance of their testimony is that on or about the 10th of June, a Miss Knight, who was the auditor for another Miami hotel, called Kaufman to report that a friend had boasted to her that she [the friend] was obtaining merchandise in the Fontainebleau coffee shop for less than its regular price. Kaufman testified that he inferred that the cashier was a male, because, as the report came to him from Miss Knight, her friend was paying a smaller fee "to a he"—"he" was passing the friend through; and that McCormick was the culprit, since he was the only male cashier in the hotel coffee shop. Two or three days after he received the report from Miss Knight, Kaufman was able for the first time to reach Novack and in turn pass the report on to him. After discussing the probable authenticity of the report with Kaufman, Novack told him to discharge McCormick. Kaufman was instructed not to reveal the true reason for the discharge because of fear of an action for defamation in light of the difficulty of proving the charge which had been directed at McCormick. The discharge occurred on June 15th.

As his reason for stating to the union representative that McCormick had been discharged because of a reduction in force, Novack explained to the Board that he did not feel that the true reason was any of the union's business, as it did not represent the cashiers, and that in addition he desired neither to bring shame to McCormick nor to give rise to a defamation action.

Upon learning that the union had complained that McCormick had been the subject of unfair labor practices, Novack obtained a signed statement from Miss Knight, in which she repeated the allegations she had previously made to Kaufman. At the hearing before the Trial Examiner Miss Knight was extremely evasive, but in substance confirmed Kaufman's version of her report. While she specifically denied mentioning a "male cashier", she did not deny use of the word "he" in her report to Kaufman.

■ The finding and conclusion of the Board that Kaufman's interrogation of the four employees constituted prohibited activity under Section 8(a)(1) of the

Act is wholly without the support of substantial evidence in the record taken as a whole. Kaufman's questions amounted to no more than innocuous inquiry, which is not prohibited by the Act. N. L. R. B. v. Hill and Hill Truck Line, 266 F.2d 883, 886 (5th Cir. 1959). While it is true that what appears on the surface to be merely innocent inquiry may, when viewed in the light of employer hostility, such as a discriminatory discharge, be found to have a tendency to interfere with the exercise of employees' rights under the Act, N. L. R. B. v. McGahey, 233 F.2d 406 (5th Cir. 1956), there is no basis in the evidence contained in this record for finding that the discharge of McCormick was improper, nor is there any evidence of other manifestations of employer hostility.

■ The primary fact in issue in the case at bar is the motive of Novack in discharging McCormick. In order to find that the discharge was violative of Section 8(a) (3) of the Act, an affirmative showing of a motivation of encouraging or discouraging union status or activity is required. See Radio Officers' Union, etc. v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954). Rejecting the respondent's quite plausible explanation that the discharge was motivated by a desire to be rid of an employee whose honesty was questionable, the Board has found instead that the discharge was motivated by a desire to discourage union activity. Ignored by the Board is the fact that there is not one shred of evidence in the record that Novack, who ordered the discharge, had any knowledge at all of either union membership or union activity by McCormick— information which he would have to have in order to discriminate against him as a union member or proponent. Nor is there any evidence that Kaufman, the supervisor, knew that McCormick was engaged in the inconsequential union activity seen here; Kaufman knew only

that McCormick, along with other employees who, so far as the record reveals, were not discharged, had joined the union. Of course, the fact that an employee who is discharged is a union member does not alone justify a finding that his discharge was discriminatory or improperly motivated. See e. g. N. L. R. B. v. Reynolds Corp., 168 F.2d 877 (5th Cir. 1948); N. L. R. B. v. Caroline Mills, 167 F.2d 212 (5th Cir. 1948). This is particularly true when the employer, as respondent has done here, shows cause for the discharge.[5] See N. L. R. B. v. Fulton Bag and Cotton Mills, 175 F.2d 675, 677 (5th Cir. 1949). There is no evidence of a history of hostility to union activity. In fact, the existing contract with the union was achieved through consent of the parties, without resort to the auspices of the Board.

■ Underlying the Board's conclusion that McCormick's discharge constituted a violation of Sec. 8(a) (3) of the Act is an insubstantial foundation consisting of scant evidence, inference piled upon inference, and rank speculation. When the foundation is recognized for what it is, it is apparent that the conclusion which rests upon it cannot stand. Rejected by the Board was every inference favorable to the contention of respondent that McCormick was discharged for what the employer considered sufficient cause, apparently on the assumption that it is vested with the power to substitute its ideas of proper business management for those of the employer. This power, however, it does not have. See N. L. R. B. v. Blue Bell, Inc., 219 F.2d 796 (5th Cir. 1955); N. L. R. B. v. Huber Motor Exp., 223 F.2d 748 (5th Cir. 1955). Whether or not the Trial Examiner would have discharged McCormick under the same circumstances is a matter of no consequence. What was and is in question is whether the discharge was discriminatory and motivated by anti-union animus. In truth

---

5 Sec. 160(c) of the National Labor Relations Act states in part: "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause."

the only substantial evidence in this record supports the conclusion directly opposed to that reached by the Board: that the reason for McCormick's discharge was that stated by Novack and Kaufman. In this the case is much like N. L. R. B. v. Cen-Tennial Cotton Gin Co., 193 F.2d 502, 504 (5th Cir. 1952). The petition for enforcement of orders is therefore denied, and the orders of the Board will be, and they are hereby, set aside.