**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EBNER BROS. PACKERS, Respondent.**

No. 21855.

United States Court of Appeals
Fifth Circuit.

June 24, 1966.

Rehearing Denied Sept. 16, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Assoc. Gen. Counsel, N. L. R. B., Martin R. Ganzglass, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Elliott Moore, Attorney, N. L. R. B., for petitioner.

Otis E. Nelson, Keith Nelson, Wichita Falls, Tex., Joseph Alton Jenkins, Dallas, Tex., Nelson, Montgomery & Robertson, Wichita Falls, Tex., Joseph Alton Jenkins & Associates, Dallas, Tex., for respondent.

Before RIVES, BROWN and MOORE,* Circuit Judges.

RIVES, Circuit Judge.

The Board seeks enforcement of its order against Respondent.[1] The Board found four violations of Section 8(a) (3) and (1) and two independent violations of Section 8(a) (1) of the National Labor Relations Act.[2]

The questions presented for review are:

1. Whether respondent was accorded a full and fair hearing before an impartial Trial Examiner.

2. Whether substantial evidence on the record as a whole supports the Board's finding that the Company, in violation of Section 8(a) (3) and (1) of the Act, discharged employees Paul Mills, N. L. Jones, LaVerne Fougeron, and Billy Ray Smith for engaging in union activities.

3. Whether substantial evidence on the record as a whole supports the Board's finding that the Company, in violation of Section 8(a) (1) of the Act, offered a benefit to Paul Mills and threatened LaVerne Fougeron for his union activity.

1. The respondent claims that the Trial Examiner denied the respondent a fair hearing by the extent to which he abused his discretion in limiting the scope of the respondent's cross-examination of Paul Mills. Mills, a truck driver, had admitted that an assigned reason for his discharge was, "He said falsifying my truck logs." He further admitted:

"Q. What did he mean by this?

"A. Well, I was showing my lunch hour and I was showing that I took it at 12:30 and later in the evening I was showing 30 minutes but really I was taking an hour off at night instead of taking my lunch meals."

On cross-examination of Mills, the respondent undertook to question him about another recent trip. The Trial Examiner took the position that the respondent should wait until it put on its own witnesses because Mills had not testified about other trips on direct examination. The respondent's counsel insisted that it was proper on cross-examination to show that Mills had been reprimanded about earlier improper logs previous to his discharge. When the Examiner persisted in his ruling, the respondent's counsel stated that he would like to reserve the right to put Mills on the stand at a later time, to which the Examiner responded: "Well, if you find that it is necessary to support your case, you will be calling him as your own witness. He won't be recalled for cross-examination, I assure you." The respondent elected not to put Mills back on the stand as its own witness.

Mills' testimony on direct examination had impugned the good faith of the respondent in its assigned reasons for his discharge. He had testified that Steve Ebner, who superintended the truck driv-

---

* Of the Second Circuit, sitting by designation.

1. The Board's decision and order are reported at 146 N.L.R.B. No. 65.

2. "§ 158. *Unfair labor practices*

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \*

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization \* \* \*."

29 U.S.C.A. § 158(a) (1) and (3).

ers, told him that he was an "intelligent person" and "that it was just circumstances" and added, "if you hadn't been out on the corner yesterday with that fat ass nigger or seen in all of the stores with that damned old commie, it wouldn't have come to this." Mills testified that he understood Ebner to be referring to Leo Scott with whom he had distributed union leaflets and to James Stewart, the union representative, with whom he had been attempting to organize the local stores. Steve Ebner denied making any such statement.

The statute prescribes that, "Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28." 29 U.S.C.A. § 160(b).

Cross-examination is probably the most valuable tool that can be employed to arrive at the truth of a disputed issue of fact. It seems clear to us that the respondent was unduly restricted in its right of cross-examination of the witness Mills. Such strict limitation cannot be excused by the fact that the rules of evidence are to be followed only "so far as practicable." 29 U.S.C.A. § 160 (b), supra. There is nothing impracticable about allowing full and searching cross-examination. On the contrary, that is often the most practical and effective way to arrive at the truth. The Examiner's offer to let the respondent call Mills as its own witness was clearly insufficient to cure the error. In the light of Steve Ebner's testimony diametrically opposed to that of Mills, it would not have been reasonable for respondent to accept that offer.

Thus restricting respondent's cross-examination of Mills, under the circumstances of this case, deprived respondent of a fair hearing insofar as Mills is concerned. We are persuaded, however, that the ruling was no more than an error of judgment on the part of the Trial Examiner and does not show bias or partiality.

The other rulings of the Trial Examiner, including his resolution of all important issues of credibility in the Board's favor,[3] are not proof of bias. The record shows that "none of the rejected evidence had this quality of inherent veracity and none of the credited evidence carried the mark of obvious falsehood." Sardis Luggage Co. v. NLRB, 234 F.2d 190, 193 (C.A.5, 1956).

2. The record contains substantial evidence from which the Board could find that each of the four named employees was dischargd for engaging in union activities. As to Paul Mills, however, the order must be vacated and the case remanded to the Board for further proceedings consistent with this opinion.

3. The record also contains substantial evidence from which the Board could find that the respondent threatened LaVerne Fougeron because he put stickers on his private automobile reading, "Go American, Go Union." We do not, however, find any substantial evidence that the respondent offered a benefit to Paul Mills in violation of Section 8(a)(1) of the Act. The Trial Examiner did not conclude that there was any such independent 8(a)(1) violation, but the Board found that John Ebner offered a benefit to Mills by saying to him, "Paul, just what will it take to satisfy you."[4]

Assuming that Mills' testimony was credited in full, the most strained construction cannot make of John Ebner's

---

3. See Sardis Luggage Co. v. NLRB, 234 F.2d 190, 193 (C.A.5, 1956); NLRB v. Pittsburgh S.S. Co., 337 U.S. 656, 659, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949), citing with approval, NLRB v. Robbins Tire & Rubber Co., 161 F.2d 798, 800 (C.A.5, 1947).

4. The circumstances and the full conversation, according to Mills' testimony, were as follows:
"A. Well, I was in the outer office, the main office and I was paying my collections—I was attempting to pay them and she couldn't take my money right then

query anything more than a question, the answer to which might possibly have led to a promise of a benefit. There is nothing in this conversation "to interfere with, restrain, or coerce employees" in violation of Section 8(a) (1).[5]

That part of the Board's Order relating to the discharge of Paul Mills is vacated and as to such part the case is remanded to the Board for further proceedings consistent with this opinion. Enforcement is denied as to that part of the Order based on a claimed offer of benefit by John Ebner to Mills. In other respects the Order is enforced.

Vacated and remanded in part; enforced in part and denied in part.

and in the course of this he, Mr. John Ebner, spoke to me and I went into his office.

"Q. I see. What did he say to you?

"A. He asked me how my wife and baby was.

"Q. What did you say to that?

"A. I explained that I didn't have a baby yet that I had only been married four months.

"Q. What did you say to that?

"A. Well, he asked me how I was and I told him I was doing all right, keeping my nose clean.

"Q. What did he say then?

"A. Well, he was addressing envelopes and he didn't say anything right then but shortly after he asked me, he said, Paul, just what will it take to satisfy you and I told him right then not anything but later on maybe I will get my satisfaction.

"Q. I see. What happened then?

"A. Well, the lady in the office, the secretary was ready to accept my money and so I excused myself and went back out and I paid my collections that I had made and asked her about my check."

John Ebner denied having asked Mills what it would take to satisfy him.

5. Compare the more definite benefits involved in the cases cited by the Board. NLRB v. Exchange Posts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964); NLRB v. Cen-Tennial Cotton Gin Co., 193 F.2d 502, 503 (5 Cir., 1952).