**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PROCESS AND POLLUTION CONTROL COMPANY, a wholly owned subsidiary of Mapco, Inc., Respondent.**

No. 76–2059.

United States Court of Appeals, Tenth Circuit.

Argued March 17, 1978.

Decided Dec. 11, 1978.

Ruah D. Lahey, Atty., N. L. R. B., Washington, D. C. (Michael S. Winer and Alan Banov, Attys., N. L. R. B., and John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for petitioner.

Mary T. Matthies, Tulsa, Okl. (Lynn P. Mattson of Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., on the brief), for respondent.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order issued against Process and Pollution Control Company (PPC or the company) based on findings that the company refused to hire one Edith Smith. because of her previous union sympathies and activities. The Board's decision and order are reported at 225 N.L. R.B. No. 201.

In its order and accompanying decision, the Board affirmed the findings and conclu-

sions of the administrative law judge with respect to the violation by the company of §§ 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(3) and (1). The Board adopted the judge's recommended order, which essentially directs the company to cease and desist from any future violations of § 8(a)(3) and from interfering "[i]n any other manner" with its employees in the exercise of self-organizational rights and other rights guaranteed by § 7 of the Act. The hiring of Mrs. Smith, with back pay to the date when she would have been hired absent the company's illegal conduct, is also ordered.

Briefly, the facts which gave rise to this proceeding are these. PPC, which manufactures environmental control equipment, is a subsidiary of Mapco, Inc., created in early 1975 by the consolidation of Cata-Sep Corporation and NuSonics Incorporated with Mapco's own Environmental Controls Division. Having purchased these other corporations and having carried out their merger, Mapco's plan was to centralize the operations of the new entity in a new building in Tulsa.

Prior to this shift in operations, PPC placed an advertisement in a Tulsa newspaper seeking applicants for, *inter alia*, two wireman/electronics assembler positions. The company's manager of administration, John A. Moss, Jr., accepted job applications and arranged for interviews with the applicants. Ellis M. Zacharias, Jr., PPC's operations manager, reviewed the applications in New Jersey and then came to Tulsa to hold interviews at the beginning of April 1975.

Ms. Smith applied for one of the wireman/assembler positions, along with a coworker at her then-current job, Betty Brewer. Zacharias testified that at an interview on April 1 he indicated to Smith that her "technical qualifications" were "valid or what [the company] was seeking." (R. 50). Smith, according to her own testimony, was given to believe that she would be hired, provided that her references proved favorable. She said that Zacharias told her at the interview that "[i]f you're as good as you say you are, you're just what this Company's looking for." (R. 72). Zacharias gave Moss the task of checking references on Smith as well as other applicants.

In the course of a phone call to Dorsett Electronics, a former employer of Smith's, Moss learned that Smith had been a "good worker," but that she was not recommended for rehire at Dorsett. Moss testified he received a "somewhat evasive answer" with respect to Smith's not being recommended for rehire, "but it did come out in the conversation that [Smith] had been active in organizing a Union." (R. 23, 166, 211). Moss' Dorsett contact also expressed surprise that Smith was applying for a job with PPC, since he thought she had gone to work for a company called Burteck after her Dorsett employment. Moss noted that Smith's application did not list any Burteck employment, though there was a "gap" in her employment history following her time with Dorsett. However, he never spoke with anyone at Burteck to verify whether Smith had in fact worked there. (R. 23–24, 170–71). Moss reported all information learned in the Dorsett reference check to Zacharias. (R. 24, 160).

Zacharias, who was primarily responsible for hiring decisions, ultimately decided to have offers of employment in the wireman/assembler positions made to Betty Brewer and to one Sandra Parrish. He decided against Smith, by his own account, because of the strong interest she had expressed at the interview in attaining a supervisory position in the company, and because of the omission in employment history on her application. (R. 37, 50, 130).

■ Smith, acting through Local 73 of the Retail Clerks Union, filed a charge against PPC[1] with the Board, alleging that

---

1. PPC was not actually named until October 15, 1975 in an amendment to the original charge filed September 8, which named only Mapco, Inc. For this reason PPC raises an issue of timeliness under the 6-month limitation of 29 U.S.C. § 160(b). We find no merit in the contention.

the company had refused to hire her because of her membership in or activities on behalf of a labor organization. Following the hearing on the charge, the administrative law judge held that a violation of §§ 8(a)(3) and (1) was established, finding that PPC had denied employment to Smith because of what it had learned concerning her previous organizational activities, and rejecting PPC's explanations for not hiring Smith as pretext.

We cannot agree with the position of the company that, as the record stands, the decision of the Board is not supported by substantial evidence so that the order must be set aside and the complaint dismissed. However, we do feel that challenges to two evidentiary rulings have merit and should be considered. If the rulings were in error and the company was entitled to the inclusion of evidence offered but rejected, and to the exclusion of evidence admitted over objection, then the view of the administrative law judge and of the Board, and our assessment of the record as a whole, might well be affected. See *NLRB v. M. Koppel Co.*, 412 F.2d 681, 687 (3d Cir.).

## I

The company argues that the administrative law judge and the Board erred by refusing to consider relevant evidence which was offered to show lack of anti-union animus. More specifically, the company says that it was error to exclude proof that Mr. Zacharias, the company officer making

the employment decision in question, had earlier employed persons whom he believed to be union members, citing *NLRB v. Sands Mfg. Co.*, 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682; and *NLRB v. Howell Automatic Machine Co.*, 454 F.2d 1077 (6th Cir.), *inter alia.* (Brief for PPC, 21, 38–40).

In this connection, counsel for the company made an offer of proof (R. 137–38) as follows:

That if Mr. Zacharias was allowed to testify, he would testify that it is his uniform belief that the machinists who are personally hired for this particularly [sic] facility, who we can name by name, were all at one time or another Union members and were probably Union sympathizers at the time that he hired them and that that made absolutely no difference to him. Mr. Zacharias will further testify, in fact, that he would in many instances favor an individual who would be a Union member because of the extensive apprenticeship programs and whatever else that they would have entered into. And I believe that those kinds of beliefs are tremendously relevant evidence in this proceeding, and I think that the questions that I was asking, Your Honor, go precisely to those issues, having him identify who the individuals were, number one, that he thought were probably Union members and, number two, why he thought they were Union members and, number three, why it didn't bother him.

We are satisfied that the amendment substituting the subsidiary related back to the filing of the original charge. The application form furnished to Ms. Smith carried the name of Mapco, Inc., and not PPC. This form was used by Moss and Zacharias in their duties as PPC employees, interviewing and making employment decisions for PPC. It was apparently for this reason that Ms. Smith had named Mapco, Inc., in the original charge (R. 85–86). No question is raised about receipt of that charge by the parent Mapco at the Tulsa address apparently shared by the parent and subsidiary. In these circumstances, where the confusion arose because of the conduct of PPC in using Mapco's application form and Mapco's name in the advertisement for applications, we feel that the technical objection that only the parent company was named in the original charge

must be rejected. See *Ref-Chem Co.*, 169 NLRB No. 45.

PPC makes no showing that it was in any way misled or otherwise prejudiced by lack of formal notice at an earlier time. See *Peterson Construction Co.*, 106 NLRB No. 143; but compare *NLRB v. Vare*, 206 F.2d 543, 547–48 (3 Cir.). The general rule of relation-back applies to charges before the Board, *Radio Officers' Union v. NLRB*, 347 U.S. 17, 34 n. 30, 74 S.Ct. 323, 98 L.Ed. 455; *North American Rockwell Corp. v. NLRB*, 389 F.2d 866, 870 (10th Cir.); *NLRB v, Shawnee Industries, Inc.*, 333 F.2d 221, 223 (10th Cir.); *Kansas Milling Co. v. NLRB*, 185 F.2d 413, 415 (10th Cir.); and we feel that the principle applies equally here to designation of the subsidiary where there was no demonstration of prejudice, and where the company's conduct caused the confusion.

The judge rejected the offer, stating (R. 139):

> I don't care whether he believed it or not, if he had that information and acted on it, you see. So I'm not interested in his belief. I'm interested in what information he had in that respect when he hired people, and that is the area in which I will grant you permission to inquire, but not generally as to his beliefs just because somebody happens to be an electrician that he just believed because of that that they were Union members, you see. This has no real meaning.
>
> So as far as your offer of proof is concerned, I'm not interested in a general belief based on the fact that somebody is in a particular trade, but whether or not he had information to that effect and nevertheless hired him. This I'm interested in.

■ We believe that it was error to reject such proof. As in many cases, PPC's motivation in not hiring Ms. Smith was determined on circumstantial evidence. In deciding such questions of intent, a company's long course of conduct with respect to unions may be considered. *E. g., NLRB v. Sands Mfg. Co.*, 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682. And in probing the broad question of anti-union animus on the basis of the facts and circumstances in this case, we feel that evidence as to what Mr. Zacharias believed about union affiliation of persons he hired was relevant, and not just proof as to what he knew on this subject from information supplied by applicants. *Cf. NLRB v. Howell Automatic Machine Co.*, 454 F.2d 1077, 1082 (6th Cir.); *U. S. Rubber Co. v. NLRB*, 384 F.2d 660, 663 (5th Cir.); *NLRB v. John S. Swift Co.*, 277 F.2d 641, 645 (7th Cir.). Bona fide beliefs held by a person, as well as his actual knowledge, are relevant in determining his intentions and motivation for his actions.

It is somewhat difficult to discern the full reasoning of the administrative law judge on this point from her remarks on the bench and from her written decision. As noted, at one point she stated that the general belief that persons who had been hired were union members had "no real meaning" (R. 139), and this might mean merely that the evidence lacked weight. However, from the record as a whole it seems clear that such evidence was excluded as irrelevant and was not considered. We must agree that the proof should not have been thus rejected. Rather, it should have been admitted and then weighed by the judge and by the Board as fact-finders, in assessing the question of credibility and the overall issue of the motive of the company in not hiring Ms. Smith, particularly where, as here, the issue turned on circumstantial evidence.

In her written decision the judge also emphasized that the company's offer of proof "had general reference to skilled craftsmen in the various traditional trades" (ALJ Decision, p. 11, n. 19), whereas the wireman/assembler position at stake in this case was presumably non-skilled and not traditional. However, we see no rational basis for regarding employer attitude toward unions in the one class of jobs as irrelevant to employer attitude toward unions in the other. It may be argued that most skilled (as opposed to unskilled) craftsmen are union members, so that an employer seeking skilled workers generally must hire union members. However, the Board in *Border Steel Rolling Mills, Inc.*, 204 N.L.R.B. 814, 826, cited proof that the employer there had previously hired skilled tradesmen who were union members in rejecting a claim of discharge because of union activity.

■ In sum, we must agree that the proof as to Mr. Zacharias's prior course of conduct in hiring employees should not have been excluded. We should not remand if there is but a remote possibility that the outcome would be affected by admitting the evidence, or if the evidence is merely cumulative. See *NLRB v. Donnelly Co.*, 330 U.S. 219, 234–35, 67 S.Ct. 756, 91 L.Ed. 854; *Wilson & Co. v. NLRB*, 156 F.2d 577, 579 (10th Cir.), *cert. den.* 329 U.S. 789, 67 S.Ct. 357, 91 L.Ed. 676; *NLRB v. Cities Service Oil Co.*, 129 F.2d 933, 936 (2d Cir.). However, remand is proper where it would not be a "useless gesture," *NLRB v. Swift*

& Co., 158 F.2d 670 (3d Cir.), but might produce a different result due to consideration of material evidence previously excluded. See NLRB v. M. Koppel Co., supra, 412 F.2d at 687; Valley Forge Flag Co. v. NLRB, 364 F.2d 310, 311 (3d Cir.).

■ We feel that admission of the evidence in question might affect the overall assessment of the case, in view of the importance of credibility of the company's disavowals of anti-union animus. Accordingly we conclude that we should deny enforcement, and remand. See NLRB v. M. Koppel Co., supra, 412 F.2d at 687.

## II

■ The company also objects to the judge's admission of certain hearsay recounted by Ms. Smith at the hearing. (Brief for PPC, 16). Over objection by the company's attorney, Ms. Smith was permitted to testify as to a statement made to her by Betty Brewer shortly after Ms. Smith was supposed to have been told whether she would be employed, specifically that Betty Brewer said she was going to ask Moss why he did not hire her. Ms. Smith was also allowed to relate the following (R. 77–78):

> Yes, Betty had told me that I was not out of the ballgame yet. Mr. Moss had told her to tell me this.[2]

The remark was recounted in the judge's written decision, (ALJ Decision, 9). The judge also pointed out that Mr. Moss did not deny sending such a message.

We believe that the admission of the hearsay in these circumstances was error. It is true that the rules of evidence are not inflexibly imposed on the Board, and that body is not held as closely to the rules as are the courts. See e. g., Helena Laboratories Corp. v. N. L. R. B., 557 F.2d 1183, 1188 (5th Cir.). Nevertheless, the Act provides that Board proceedings shall, "so far as practicable," be conducted in accordance with the rules of evidence. 29 U.S.C. § 160(b).

In this case, the circumstances did not make observance of the safeguards of the hearsay rules impracticable. The Board's hearing was held at Tulsa, Oklahoma. Mr. Zacharias testified that at that time Ms. Brewer was still employed by the company (R. 53) and the company's plant was located at Tulsa. (R. 18; ALJ Decision 2). And there was no showing that it would have been difficult to have Ms. Brewer present for observation of her demeanor and cross-examination on her statements. We cannot sanction the neglect of hearsay rules in these circumstances. See NLRB v. McClure Associates, Inc., 556 F.2d 725, 726 (4th Cir.); NLRB v. Lowell Sun Publishing Co., 320 F.2d 835, 941 (1st Cir.). By § 160(b) Congress has indicated an intention that the rules of evidence be followed wherever possible. NLRB v. Howell Automatic Machine Co., supra, 454 F.2d at 1083.

While this error alone would not call for a remand, since we conclude that we should remand on other grounds we express these views for consideration in connection with further proceedings before the Board.

## III

Lastly, the company argues that the order and notice of the Board are overbroad and unjustified. (Brief for PPC, 46–48). We intimate no view as to the decision which should be made on the merits of the charges after further proceedings on remand. However, since these questions about the order may arise again, we will address them.

Paragraphs 1(a) and (b) of the order direct that the company cease and desist from:

> (a) Discouraging membership in, or activities on behalf of any labor organization of its employees, by denying employment to applicants because of their past activities on behalf of a labor organization, or otherwise discriminating in re-

2. While Mr. Moss's statement itself would appear to be admissible as an admission of a party. if proven by testimony of Ms. Brewer, that was not done here. Whether the statement was made by Moss, and the circumstances surrounding the remark, were matters on which the company was entitled to cross-examine Mrs. Brewer as the declarant.

gard to the hire or tenure of employment or any terms or conditions of employment of its employees.

(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection as guaranteed by Section 7 of the Act, or to refrain from any or all such activities.

 We agree that the order is overbroad. Generally the form and scope of an order are for the Board to mold to the particular facts and circumstances in each case. *NLRB v. Brown-Dunkin Co.*, 287 F.2d 17, 20–21 (10th Cir.). However, the Act does not give the Board authority to enjoin violations of all its provisions merely because one violation is found; to justify restraint of other violations, it must appear that they bear some resemblance to that which the employer has committed, or that danger of their commission is to be anticipated from the course of his conduct in the past. *NLRB v. Express Publishing Co.*, 312 U.S. 426, 437, 61 S.Ct. 693, 85 L.Ed. 930. See also *NLRB v. Selvin*, 527 F.2d 1273, 1277 (9th Cir.); *Hodgson v. Corning Glass Works*, 474 F.2d 226, 227 (2d Cir.); *Morgan Precision Parts v. NLRB*, 444 F.2d 1210, 1215 (5th Cir.).

The facts in this case do not support the broad scope of paragraph 1(b) of the order. See *N. L. R. B. v. Melrose Processing Co.*, 351 F.2d 693, 700 (8th Cir.). If a similar violation should be found on remand as was found before, it would nevertheless be one particular violation and not part of "persistent attempts by varying methods" to interfere with employee rights. *N. L. R. B. v. Express Publishing Co., supra*, 312 U.S. at 437–38, 61 S.Ct. 693. Therefore, paragraph 1(b) should be modified by the Board, if such a violation is found again, so as to limit the prohibitions of the order by reasonable terms to violations similar to the particular violation which may be found. The second paragraph of the notice containing the "in any other manner" provisions should be similarly modified, if a cease and desist order is entered. We are not persuaded by the remaining objections to the order and notice.

For reasons stated enforcement of the order is denied and the proceeding is remanded to the Board for further proceedings in accord with this opinion, without prejudice to the Board's right to renew its petition for enforcement if an order is again entered against the respondent. Determination as to whether a complete new hearing should be held, or only a partial re-hearing in accord with the evidentiary rulings herein, is left to the Board's discretion.