**STURDEVANT SHEET METAL & ROOFING COMPANY, INC., and Orion Trading Company, Inc., d/b/a Sturdevant Roofing Company, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 79–1019.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 17, 1980.

Decided Nov. 20, 1980.

Douglas G. Voeglar, Albuquerque, N. M. (Leonard L. Pickering and Wayne E. Bingham, of Pickering & Bingham, Albuquerque, N. M., with him on the brief), for petitioners.

L. Joseph Ferrara, Atty., Washington, D. C. (William R. Stewart, Deputy Asst. Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for respondent.

Before McWILLIAMS and BARRETT, Circuit Judges, and BOHANON, District Judge.*

McWILLIAMS, Circuit Judge.

Petitioners seek review of an order of the National Labor Relations Board. The Board, by cross–application, seeks enforcement of the same order. The petitioners are: (1) Sturdevant Sheet Metal & Roofing Company, Inc., an Oklahoma corporation, and (2) Orion Trading Company, Inc., doing business as Sturdevant Roofing Company, a New Mexico corporation. The relationship between these two companies presents one of the two issues in the case.

Sturdevant Sheet Metal & Roofing Company, Inc., the Oklahoma corporation which will sometimes be referred to as SSMR, is based in Oklahoma and conducted business in the neighboring states of Kansas and New Mexico, as well as in Oklahoma. James Sturdevant was vice–president of SSMR, and his father, George, was its president. George was the major stockholder in SSMR, and James and his brother each owned a qualifying share.

James Sturdevant was in charge of SSMR's business operations in New Mexico, while his father and brother handled SSMR's business in other states. James Sturdevant entered into a collective bargaining agreement with the United Slate, Tile and Composition Roofers, Damp and

* Of the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

Waterproof Workers' Association, Local No. 174, AFL–CIO on behalf of SSMR. The latest bargaining agreement with the Union was signed by James Sturdevant on behalf of SSMR in 1976, and was effective from April 1, 1976, to March 31, 1978. An addendum to the agreement was signed by James Sturdevant for "Sturdevant Roofing Company" on May 5, 1976.

Sometime in 1976, James Sturdevant sought, and eventually obtained, changes in the family's business arrangements. As a result, on January 1, 1977, SSMR, as such, ceased doing business in New Mexico. The business theretofore conducted in New Mexico by James Sturdevant for SSMR was thereafter conducted by James Sturdevant operating under a different corporate name. Specifically, Orion Trading Company, Inc., a dormant New Mexico corporation, was activated by James Sturdevant and it carried on the business theretofore conducted in New Mexico by SSMR under the trade name "Sturdevant Roofing Company." James Sturdevant, who continued to serve as vice–president of SSMR, was the president of Orion Trading Company, doing business as Sturdevant Roofing Company, and his father was vice–president, with James' wife serving as the secretary and treasurer. James Sturdevant and his wife owned two–thirds of the stock in Orion, and the father held the remaining one–third of Orion's stock.

Orion, under the trade name "Sturdevant Roofing Company," engaged in the same business as did SSMR. It occupied the Albuquerque offices previously used by SSMR and kept SSMR's telephone number. The exterior sign on the premises was changed from "Sturdevant Sheet Metal & Roofing Company, Inc." to "Sturdevant Roofing Company." Sturdevant Roofing took over all of SSMR's assets, including accounts receivable, tools, equipment and vehicles. No payment was made to SSMR for its assets. Sturdevant Roofing also assumed SSMR's

mortgage payments for the office premises and retained SSMR's employees. James Sturdevant remained solely responsible for the management of the new operation, including the hiring and firing of employees, as well as its relations with the Union. Sturdevant Roofing did not inform the Union of the name change and continued to recognize the bargaining agreement previously entered into between the Union and SSMR, making, for example, check–off deductions and welfare contributions required by the agreement.

The bargaining agreement between the parties provided that if either the Union or management decided that the wages called for by the agreement were not competitive, either side could ask for the contract to be reopened for renegotiation on residential pay rates. On February 4, 1977, Sturdevant, and three other roofing contractors who were also parties to the same agreement, sent a letter to the Union requesting a reopening of the agreement for "renegotiation on residential roofing." This letter was signed by James Sturdevant, and others, and opposite James Sturdevant's signature were the typed words "Sturdevant Sheet Metal & Roofing Co., Inc."

On March 22, 1977, there was a negotiating session between Union representatives and the several employers.[1] The employers made a proposal which the Union representatives agreed to take back to their membership. On April 2, 1977, the Union sent a letter to the roofing contractors involved. The major dispute in the case concerns the letter. The Union contends that the letter was a counter–proposal. James Sturdevant, however, construed the letter to be an acceptance of the companies' earlier proposal.[2] Based, then, on what he apparently thought was an understanding with the Union, Sturdevant promptly put into effect the reduced wages for apprentice roofers on residential property.

---

1. This was the only meeting that was held between the contractors and the Union regarding the proposed reduction in wages.

2. Only Sturdevant interpreted the Union's letter as an acceptance. The other roofing contractors to whom the letter was sent did not consider it to be an acceptance and did not lower wages.

It was in this general setting that the Union on July 11, 1977, filed unfair labor charges against SSMR. Based on this charge, the Acting Regional Director issued a complaint against SSMR, charging that it had violated Section 8(a)(1) and (5) of the National Labor Relations Act by unilaterally reducing apprentices' pay on residential work before reaching either agreement or impasse with the Union regarding the change. 29 U.S.C. § 158(a)(1) and (5) (1976).[3]

As indicated, the Board's complaint named SSMR as the respondent, and service was on James Sturdevant in New Mexico. SSMR by answer denied any unfair labor practice. At the hearing before the Administrative Law Judge, counsel moved to dismiss the complaint on the ground that, at the time of the alleged unfair labor practice, SSMR had ceased operating in New Mexico, and that accordingly any possible unfair labor practices were attributable only to Orion, doing business as Sturdevant Roofing Company. The Judge denied the motion, and permitted General Counsel to amend the complaint to redesignate the respondent as "Sturdevant Sheet Metal & Roofing Co., Inc., and its *alter ego*, and/or successor, Sturdevant Roofing Company." Such amendment was then served on Orion.

After hearing, the Administrative Law Judge found that, under the circumstances, SSMR and Orion, doing business as Sturdevant Roofing, were *alter egos*, and that service of the complaint on SSMR was service on Sturdevant Roofing. As to the unfair labor charge, the Judge found that Sturdevant Roofing had ceased to bargain collectively with the Union and had unilaterally changed working conditions in violation of the Act. The Judge rejected Sturdevant's argument that an agreement was reached between the parties calling for the reduction in wages, as well as the alternative argument that the negotiations had reached an impasse. The Judge's recom-

mended order required, *inter alia*, Sturdevant to again bargain collectively with the Union over the proposed changes in working conditions. Other affirmative action was recommended as well. The Board affirmed the rulings, findings and conclusions of the Administrative Law Judge, and adopted his recommended order. The Board's Decision and Order appear at 238 N. L. R. B. 28 (1978), and attached thereto is the decision of the Administrative Law Judge.

Counsel first challenges the finding of the Board that SSMR and Sturdevant Roofing Company are *alter egos*. The record does not support the finding, argues counsel, and such being the case, the complaint was served on the "wrong company," and the amendment of the complaint at the time of the hearing before the Administrative Law Judge to include Sturdevant Roofing as a respondent and the service on Sturdevant Roofing at that time does not cure the defect. We do not agree with this argument.

For a general discussion of the *alter ego* doctrine in a labor relations context, see our recent opinion in *National Labor Relations Board v. Tricor Products, Inc.*, 636 F.2d 266 (10th Cir. 1980), our No. 79–1231, filed November 14, 1980. Such discussion will not be repeated here. It is sufficient to state that, where a second employer is found to be the *alter ego* of its predecessor employer, the second employer will be required not only to recognize the union, but also to adhere to and work under the collective bargaining agreement negotiated by the predecessor. *See*, in addition to *Tricor* and the cases cited therein, *N. L. R. B. v. Scott Printing Corp.*, 612 F.2d 783 (3d Cir. 1979). Viewed in the light of the principles referred to in *Tricor*, the record amply supports the Board's finding that SSMR and Sturdevant Roofing are *alter egos*, and therefore service on SSMR constitutes ser-

---

**3.** The portions of the National Labor Relations Act involved, 29 U.S.C. § 158(a)(1) and (5) (1976), provide that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the

rights guaranteed" by the Act and that it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees ..."

vice on Sturdevant. Additionally, we note that James Sturdevant signed the collective bargaining agreement on behalf of SSMR, and then signed an addendum thereto using the name Sturdevant Roofing, indicating that he used the two names interchangeably. It is admitted that the Union was not informed of the name change. So, any confusion in names was directly attributable to James Sturdevant, and he should not be allowed to later profit therefrom. The situation is somewhat akin to the elusive defendant who attempts to evade the process server. *N. L. R. B. v. Clark*, 468 F.2d 459 (5th Cir. 1972). Further, the letter requesting a renegotiation of the wages paid residential roofers was signed by James Sturdevant on behalf of SSMR. Service of the NLRB complaint was made on James Sturdevant. Thus, James Sturdevant had actual knowledge of the fact that a complaint had been issued which charged him with a unilateral reduction in pay for residential roofers. There is nothing to indicate that Sturdevant Roofing was in any way misled or otherwise prejudiced. *N. L. R. B. v. Process & Pollution Control Co.*, 588 F.2d 786, 788–89, n. 1 (10th Cir. 1978). *See also Certified Building Products, Inc. v. N. L. R. B.*, 528 F.2d 968 (9th Cir. 1976) and *Potter v. Castle Construction Co.*, 355 F.2d 212 (5th Cir. 1966). All things considered, the Board's *alter ego* finding is supported by the record.

■ Counsel also argues that, in reducing the pay of residential roofers, Sturdevant Roofing did not act unilaterally, but merely acted in accord with a new agreement between the parties. The Board, however, found that an agreement between the parties had not been reached, nor was there an impasse. Such finding also finds support in the record.

James Sturdevant testified at the hearing that, based on the Union's letter of April 2, he thought the several contractors had an understanding with the Union regarding a reduction in pay of residential apprentice roofers. Union officials testified that their letter of April 2, 1977, was a counter–proposal, and not an acceptance of the earlier proposal of management. Admittedly, the letter was not a model of clarity, but certainly was subject to the reasonable interpretation that it was only a counter–proposal and did not state the final position of the parties. Not only did this letter refer to the contemplated wage reduction as a "proposal" three times, but it ended with the Union stating, "Please advise us of your decision." Two other employers who were also negotiating with the Union concerning the wage reduction did not believe that the April 2 letter constituted an acceptance of management's earlier offer. And there was testimony that, generally, when a change of wages was involved, the two sides would sign a contract effecting the change. In short, the evidence supports the finding that Sturdevant Roofing acted unilaterally in reducing the pay of residential apprentice roofers. In other words, the Board's finding that there was no agreement between Sturdevant Roofing and the Union, and that their collective bargaining efforts had not yet reached an impasse, must, under the circumstances, stand.

■ The Board specifically found that Sturdevant Roofing's unilateral implementation of wage reduction was not motivated by "bad faith," but was apparently based "on a less than careful reading" of the Union's letter of April 2. Such, however, does not help Sturdevant. In situations involving a unilateral change in contractually established terms and conditions of employment, good or bad faith is not a relevant consideration. *N. L. R. B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

Enforcement is hereby ordered.