NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BRENNAN'S, INC., Respondent.

No. 22168.

United States Court of Appeals
Fifth Circuit.

Aug. 23, 1966.

Harold B. Shore, Atty., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Warren M. Davison, Attorney, N.L.R.B., for petitioner.

C. Dale Stout, New Orleans, La., Kullman & Lang, New Orleans, La., for respondent.

Before GEWIN and COLEMAN, Circuit Judges, and McRAE, District Judge.

GEWIN, Circuit Judge:

The National Labor Relations Board, having found that Brennan's, Inc. committed unfair labor practices in violation of Sections 8(a) (1) and 8(a) (3) of the National Labor Relations Act, ordered Brennan's to cease and desist from such practices and to offer reinstatement to one Wilbur LaFleur with full back pay. 147 N.L.R.B. No. 164 (1964). The Board petitions for enforcement of its order pursuant to Section 10(e) of the National Labor Relations Act, as amended, 61 Stat. 147, 72 Stat. 945, 29 U.S.C. § 160(e).

██ Early in March 1963, the Hotel, Motel and Bartenders Local 166, AFL–CIO commenced an organizational campaign among the employees of Brennan's Inc. at Brennan's French Restaurant in New Orleans, Louisiana.[1] During the campaign Mr. Wilbur LaFleur and Mr. Johnny Crooks, two of the employees, were active in the organizational effort. Upon petition by the Union for certification as bargaining representative, the Board conducted an election on May 17, 1963, which the Union lost. On June 27, 1963, the Union filed charges with the Board against Brennan's, Inc., alleging the commission of unfair labor practices. A hearing was held before a Trial Examiner in New Orleans on October 14, 15 and 16, 1963. The Trial Examiner found that Brennan's, in its efforts to defeat union organizational attempts at its restaurant, had engaged in conduct violative of Section 8(a) (1) by means of threats, promises, coercive interrogation, soliciting employees to work against the Union, and creating the impression of surveillance. It was further found that Brennan's violated Section 8(a) (3) by discriminating against Mr. LaFleur because of his union activities and thereby forcing him to quit his job. Therefore, the Trial Examiner recommended that Brennan's be ordered to cease and desist from such illegal conduct and to reinstate Mr. LaFleur to his former position as service

---

1. Brennan's enjoys an enviable reputation as one of the outstanding French restaurants in New Orleans and is widely recommended throughout the South. The restaurant is an enterprise of the Brennan family. Mr. Richard and Owen Brennan and Mrs. Ella Brennan Martin actively manage and operate the restaurant.

captain[2] in the main dining room with any loss of pay he may have suffered by Brennan's discriminatorily removing him from the main dining room to the A Room[3] prior to his resignation.

The Board adopted the findings, conclusions and recommendations of the Trial Examiner with only minor modifications. The Board found additional conduct of Brennan's to be in violation of Section 8(a) (1) and also concluded that Mr. LaFleur was constructively discharged[4] and thus entitled to full back pay and not the difference in pay between the main dining room and the A Room. Accordingly, the Board ordered Brennan's to cease and desist from conduct prohibited by Section 8(a) (1) and to take the designated affirmative action.

■ The Board has petitioned for the enforcement of its order. Therefore, we must determine whether there is substantial evidence on the record as a whole to support the Board's findings that

Brennan's violated Section 8(a) (1) and 8(a) (3) of the NLRA. N.L.R.B. v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 12 L.Ed.2d 839, 849 (1965); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

■ In determining whether Brennan's interfered with, restrained, or coerced its employees in the exercise of their right to organize a union as prohibited by Section 8(a) (1),[5] the Trial Examiner heard the testimony of numerous witnesses. In many instances the Examiner was faced with resolving conflicting testimony which oftentimes was uncorroborated. The record of the Trial Examiner's decision and order with respect to the 8(a) (1) violation reveals that he made his findings of fact only after a thorough analysis of the demeanor of the witnesses and the plausibility of their testimony. It is also apparent from the record that the Examiner did not accept the testimony of the employees without question for frequently their testi-

2. The tables in Brennan's dining rooms are serviced by teams of three men consisting of two waiters in black coats and a service captain who wears a red coat. Although the service captain receives $5.00 per day from the employer and the other men receive $3.00, all three split the tips evenly, which are their principal source of income. The service captain occupies his position by reason of his greater experience and knowledge as a waiter and is in general charge of his team and is responsible for the proper discharge of their duties. His position is comparable to a group leader or gang pusher in industrial type organizations and he is not a supervisor within the meaning of the NLRA.

3. Brennan's French Restaurant consists of several different dining rooms covering two separate floors among which are the main dining room on the ground floor and the A Room on the upper floor. The differences which exist between the various dining rooms will be explored in the latter portion of this opinion.

4. Contrary to the majority, Member Jenkins found the evidence insufficient to establish that LaFleur's discharge was at-

tributable to his union activity, and, accordingly, did not find a violation of Section 8(a) (3) in this regard.

5. The National Labor Relations Act, § 8 (a) (1), 61 Stat. 140, 29 U.S.C. § 158(a) (1) states:
 "(a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."
 The rights so guaranteed by section 7 of the NLRA, 61 Stat. 140, 29 U.S.C. § 157 are:
 "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any and all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

mony was rejected and that of the Brennan's was accepted. The Trial Examiner ultimately found that the Brennan's or their supervisory personnel, in an effort to discourage their employees from voting for the Union, threatened loss of employment, promised benefits for the rejection of the Union, interrogated employees as to their support of the Union, and created an impression of surveillance of employees' union activity. Consequently, these statements were found to have exceeded the permissible limits of Section 8(c) of the NLRA.[6]

Brennan's attacks these findings by pointing out to us that many of the statements are uncorroborated and others are contradicted by the testimony of other witnesses. Brennan's urges us to reject these statements as being incredible and implausible and insists that the statements have lost their true meaning by not being properly viewed in the context in which they were spoken.

In view of the above objections to the findings of the Trial Examiner, we have studiously reviewed the entire record and conclude that there is substantial evidence on the record as a whole to support the Trial Examiner's findings that such conduct was engaged in by Brennan's and that such activity on their part violated Section 8(a) (1). N.L.R.B. v. Coats and Clark, 241 F.2d 556, 557 (5 Cir. 1957) (threats of reprisal); Sunshine Biscuits, Inc. v. N.L.R.B., 274 F.2d 738, 740 (7 Cir. 1960) (promise of benefits); N.L.R.B. v. Camco, Inc., 340 F.2d 803 (5 Cir. 1965) (coercive interrogation); N.L.R.B. v. Harbison-Fischer Mfg. Co., 304 F.2d 738 (5 Cir. 1962) (coercive interrogation); N.L.R.B. v.

Birmingham Pub. Co., 262 F.2d 2, 7 (5 Cir. 1959) (soliciting abandonment of union activity); Hendrix Mfg. Co. v. N.L.R.B., 321 F.2d 100, 104, n. 7. (5 Cir. 1963) (creating the impression of surveillance).

The Trial Examiner found that Brennan's illegally discriminated against employee LaFleur in removing him from his station in the main dining room to the A Room, because of his union activities, which caused LaFleur to terminate his employment; and thus constituted a constructive discharge in violation of Section 8(a) (3).[7] In the words of the Examiner, " * * * the concept of constructive discharge is discrimination in the transfer to the new job or discrimination in the imposition of more onerous tasks in the existing job." Although there is much testimony regarding possible discrimination toward LaFleur prior to his transfer to the A Room, such as continuous work without a day off, the Trial Examiner did not find LaFleur to have been treated appreciably different from the other employees at Brennan's. The Trial Examiner based his finding of a constructive discharge mainly on the transfer of LaFleur to the A Room. The testimony regarding the events leading up to the transfer is basically not conflicting.

About 8 P.M. on the evening of June 7, 1963, LaFleur asked two male guests if they desired some wine with their meal. One of them replied, "See Buzzy [Fannin] he knows the kind of wine I drink." LaFleur then went to the entrance hall where Fannin was standing along with Aymore Dore, the maitre d'. With the exception of Owen Brennan who stood

---

6. The National Labor Relations Act, § 8 (c), 61 Stat. 140, 29 U.S.C. § 158(c) reads:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefits."

7. The National Labor Relations Act, § 8(a) (3), 61 Stat. 140, 29 U.S.C. § 158 (a) (3) states:

"(a) It shall be an unfair labor practice for an employer—
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

several feet from Dore and Fannin, no one else was in the immediate vicinity. LaFleur said, "Buzzy, what kind of wine does those two homos on table two like?" Fannin replied, what do you mean calling our guests by that name. LaFleur claimed surprise at Fannin's rejoinder and shortly thereafter returned to his station. Dore and Owen Brennan then discussed the remark and Brennan instructed Dore to tell LaFleur to go home for the evening. This he did and La-Fleur left without questioning the reasons for the order. The following morning LaFleur was instructed to report to Mrs. Martin. She inquired about the remark LaFleur had made the evening before and questioned, "That kind of language is used in a restaurant?" LaFleur contended that such language was often used in jest to refer to various guests and the waiters often jokingly used similar terms in reference to themselves. Mrs. Martin then instructed the personnel manager to lay off LaFleur for a seven-day period and upon his return to change his serving station from the main dining room downstairs to the A Room upstairs. Following his seven-day lay-off, LaFleur returned to work as scheduled on Sunday, June 16, 1963. He performed his duties as service captain in the upstairs dining room as instructed and that evening, since the A Room was closed, he worked the evening shift downstairs in the main dining room. After departing from the restaurant that night, LaFleur never reported to work again.

The Trial Examiner found that serving in the A Room was a less desirable position than in some of the other Brennan dining rooms. We agree, for there is substantial evidence to support this finding. Owen Brennan had recently stated that LaFleur had the best station in the house, referring to his position as service captain in the main dining room. The old, permanent New Orleans families frequented the downstairs dining hall, whereas the transient guests were taken upstairs. Also the main dining room is always open during business hours

whereas the A Room is not. The finding that the main dining room is more lucrative is not supported by the evidence for no adequate evidence was ever introduced by which such a determination could be made.

■ It has long been established that a finding of a Section 8(a) (3) violation will normally turn on the employer's motivation. N.L.R.B. v. Great Dane Trailers, Inc., 363 F.2d 130 (5 Cir. 1966). The Brennan's testified that LaFleur's transfer was the result of the derogatory statements he made about the two guests. They explained that they punished La-Fleur in this manner; because if such should ever happen again, it would be better for Brennan's business if only transient guests heard it rather than the regular clientele. LaFleur testified that the transfer was motivated not by his unseemly remarks, but was the result of the Brennan's anti-union sentiment.

■ The record reveals quite clearly that the Brennan's were aware of La-Fleur's participation in the union campaign as one of the leading union adherents and viewed these activities with both contempt and hostility. We call attention to our findings of a Section 8(a) (1) violation. But we have held in recent cases that the fact that a discharged employee is a union member does not alone justify a finding that his discharge was discriminatory or improperly motivated, particularly when the employer shows cause for the discharge. N.L.R.B. v. Fountainebleau Hotel Corp., 300 F.2d 662 (5 Cir. 1962); Frosty Morn Meats, Inc. v. N.L.R.B., 296 F.2d 617 (5 Cir. 1961). However, demonstrations by an employer of anti-unionism are highly significant factors for Board evaluation in determining motive for a discharge. N.L.R.B. v. Dan River Mills, Inc., 274 F. 2d 381 (5 Cir. 1960).

■ We do not question the right of an employer to discipline his employees for a breach of company policy. Although the record indicates that such remarks have often been made by Brennan's employees, no one took issue with

the Brennan's assertion that this conduct was unknown to them. The relationship of employee personnel to the public and their conduct in the service of patrons of the restaurant is seriously important to management and to the reputation and good will of the business. Any improper, lewd, lascivious or vulgar expressions in or near the patrons should not and cannot be condoned. The statement about which LaFleur was reprimanded was highly objectionable. We are of the opinion, therefore, that the placing of LaFleur in a different serving locale, was a justifiable management prerogative, if done for the proper reason, as punishment for his conduct.

 We have reviewed the record as a whole to determine whether there is sufficient evidence to draw the inference of improper motivation on the part of Brennan's. The Trial Examiner places great weight on the manner in which the disciplinary action was taken against La-Fleur; particularly the fact that Owen Brennan, present on the occasion, did not mete out the punishment but referred it to Mrs. Martin. Also, the Trial Examiner relied on the fact that such statements although unknown to the Brennans, were asserted not to be uncommon in the Brennan establishment. We must decide whether these facts carry with them an inference of unlawful intention so compelling that it is justifiable to disbelieve the employer's protestations of innocent purpose. We find that they do not. Based upon the term "so compelling," we conclude that if the employer's conduct carries with it any other reasonable inferences of a legitimate motive, the inference of illegality does not control. N.L.R.B. v. Great Dane Trailers, Inc., supra. We find no overtones of anti-union sentiment in referring the punishment from one Brennan to another. The record indicates that this was an incident of first impression for the Brennans and the fact that it was handled by Mrs. Martin on the day following the incident and not by Owen Brennan on the night of the transgression does not readily give rise to an in-ference that the Brennan's were unlawfully motivated. We think such an incident occurring in a restaurant would quite naturally cause the owners to reflect upon it before choosing a proper disciplinary action. We have already discussed the fact that such statements were said to be freely made by Brennan employees; but, we repeat, the evidence does not indicate that this was known by any of the Brennans.

Therefore, the evidence fails to support the conclusion that LaFleur was constructively discharged by his transfer. Rather, substantial evidence in the record as a whole supports the inference that LaFleur's transfer was a product of his own misconduct. Therefore, we find no violation of Section 8(a) (3).

The petition for enforcement of the Board's cease and desist order based on violations of Section 8(a) (1) is hereby granted. Having concluded that the evidence does not support the finding of an 8(a) (3) violation, the petition for enforcement of this portion of the Board's order is denied.

Enforced in part and denied in part.