**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**SOUTHERN SEATING COMPANY, Nu
Products Division, Respondent.**

**No. 71-2138.**

United States Court of Appeals,
Fourth Circuit.

Argued May 12, 1972.

Decided Nov. 9, 1972.

**1346**

Allen H. Feldman, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Eugene B. Granof, Atty., N. L. R. B., on brief), for petitioner.

Arthur McM. Erwin, Spartanburg, S. C. (Erwin & Bradley, Spartanburg, S. C., on brief), for respondent.

Before BOREMAN, Senior Circuit Judge, CRAVEN, Circuit Judge, and BLATT, District Judge.

BOREMAN, Senior Circuit Judge:

The National Labor Relations Board seeks enforcement of an order against Southern Seating Company, Nu Products Division, (hereafter company), to cease and desist from engaging in discriminatory practices in violation of § 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3), 49 Stat. 452 (1935) as amended, and to reinstate Guy David McDaniel to his former position with the company together with any loss of earnings he may have suffered by reason of his unlawful discharge.

McDaniel was discharged from his position in the welding department of the company on April 13, 1970, for admittedly having actively engaged in union organizational activities. The company claimed that McDaniel was a supervisor [1] at the time of his discharge and was therefore not protected by § 8 of the Act which applies only to "employees"; that the term "employees" excludes "any individual employed as a supervisor." [2] Before this court, the company claims that the Board unlawfully relitigated the question of McDaniel's status subsequent to a determi-

---

1. § 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), defines "supervisor" as:

   . . . any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, *or effectively to recommend such action,* if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. (Emphasis added.)

2. § 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3).

nation by a Regional Director at a representation hearing that assistant foremen were supervisors; and, that if the Board lawfully undertook to relitigate McDaniel's status, it acted arbitrarily and capriciously in crediting McDaniel's testimony as to his lack of supervisory powers in light of the inconsistencies therein.

The company is engaged in the business of manufacturing furniture at High Point, North Carolina. McDaniel had worked in the welding department on the first shift from January 30, 1970, until his discharge.[3] During the first three days on the first shift he worked as an ordinary welder and thereafter filled the position which the company characterizes as that of "assistant foreman." McDaniel himself referred to the position as that of a "jig set-up man."

The parties agree that McDaniel's duties consisted of supplying to the separate booths, in which the welders worked, the proper pieces to be welded into a finished product, together with a "jig," which is a device for holding the parts in the proper relation to each other while the welder worked on them. He was to make sure that the welders always had work to do and had a list from which to select the next item to be completed. He also had responsibility to check the finished products and to return them to the welder if he found them to be faulty.[4] There is conflicting testimony as to any discretion which McDaniel had to vary the work schedule or to exercise any of the controls, exercised by or delegated to those in supervisory positions, over the welders.

McDaniel consistently maintained that he had no control over the work assignments but merely chose the welding job "at the top of the list" given him by his supervisor, David Twisdale, the foreman of the welding department, and could only depart from the list if a "rush job" were requested, and he would then be directed to do so by foreman Twisdale. The plant superintendent, Robert Craven, testified that as an assistant foreman, McDaniel had the authority to report rule infractions and recommend hiring and firing, time off and raises in pay. McDaniel denied that he possessed such authority and had never been told that he had it. Uncontroverted evidence shows that McDaniel never exercised any of these powers when working on the first shift.[5]

The company correctly argues that it is not the exercise of authority, but the delegation of authority, which is indicative of the attributes of a supervisor.[6] However, we think it may fairly be added that an employee must be informed of such delegation of authority to act in a manner reserved to those in supervisory positions.

We find no evidence in the record to indicate even a suggestion to McDaniel by the company that such supervisory status had been delegated to him until Friday, April 10, 1970, when McDaniel was invited for the first and only time to attend a meeting of supervisors. At that meeting, the company

---

3. From April of 1968 until January 30, 1970, McDaniel worked on the second shift which was abolished and merged into the first shift on the latter date.

4. The assistants did not inspect every finished item but only ran a "spot-check" on the work, according to Robert Craven, plant superintendent.

5. However, when working as a welder on the second shift, McDaniel often performed duties (in addition to actual welding) similar to those performed on the first shift. On one occasion when on the second shift he recommended a raise in pay for a fellow welder but there was no showing that the recommendation was or was not followed.

6. Turner's Express, Inc. v. N.L.R.B., 456 F.2d 289, 292 (4 Cir. 1972):
   . . . if a person alleged to be a supervisor performs any one of the functions set forth in the statutory definition, he meets the test, and it is not necessary that such person is required to regularly and routinely exercise such powers, but it is the existence of the power that determines his status as a supervisor.

did not inform McDaniel of the specific duties and powers which they contend had been granted him upon his promotion to an "assistant foreman," but merely read the definition of a supervisor as contained in the Act, 29 U.S.C. § 152(11), and informed him that they considered his position to fit within that definition. The company further informed McDaniel that anyone in a supervisory position who acted in furtherance of union organizational efforts, was subject to discharge. Upon McDaniel's stated refusal on the following Monday to discontinue his organizational efforts, he was discharged. The determination whether McDaniel was a "leadman," [7] as asserted by the General Counsel, or a supervisor is a question of fact to be decided by the Board in the exercise of its expertise [8] and, although this court might have reached a different result as an original matter,[9] it is bound by the Board's decision if supported by substantial evidence on the record as a whole; [10] and we find that the decision here is so supported.

The company urges this court to overturn the finding of credibility as to McDaniel's testimony in relation to his duties. There were conflicts in McDaniel's testimony on two occasions. When asked if he had ever heard the term "assistant foreman" used in the plant, McDaniel testified that he had not; yet upon cross-examination he admitted asking the person with whom he worked, William Little, if Little's title was that of "assistant foreman." However, a reasonable interpretation of McDaniel's statement was that he had not heard the term used by others, only the one time when he raised the question himself.

When questioned about the contents of his affidavit filed with the Board, and whether he was familiar with it, McDaniel was unsure in his reply and several times changed his answer during repeated questioning by counsel for the company. The company characterizes this episode as evincing contrived testimony, showing that he was giving answers which he considered most beneficial to his interests and that the trial examiner's resolution of credibility in the face of it was "astounding." In support of its position the company cites N. L. R. B. v. Smoky Mountain Stages, 447 F.2d 925 (4 Cir. 1971), in which this court reversed the Board's resolution of credibility in favor of the discharged employee and refused to enforce the Board's order of reinstatement.

In *Smoky Mountain Stages,* the employee's testimony was shown to be false in almost every instance by objective evidence.[11] For the Board to find

---

7. A "leadman" is a skilled employee who aids those with less experience, *i. e.*, a "straw-boss."

8. Corrie Corp. v. N.L.R.B., 375 F.2d 149, 155 (4 Cir. 1967):
   Like the determination of what is an appropriate unit, the determination of whether an individual is an "employee" or a "supervisor" within the meaning of the Act is a matter to be determined primarily by the Board in the exercise of its expertise, . . .
   *Accord,* Local No. 207, etc. Iron Workers v. Perko, 373 U.S. 701, 706, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963).

9. N.L.R.B. v. United Insurance Co., 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed. 2d 1083 (1968).

10. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477–478, 71 S.Ct. 456,

95 L.Ed. 456 (1951); N.L.R.B. v. Hearst Publications, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); N.L. R.B. v. Union Brothers, 403 F.2d 883, 889 (4 Cir. 1968); Corrie Corp. v. N.L.R.B., 375 F.2d 149, 155 (4 Cir. 1967).

11. When confronted with photographic evidence that he had been driving 85 m. p. h. in a 65 m. p. h. zone, compiled by a private investigator, he continued to deny that he was speeding. When charged with leaving the bus terminal without authorization, he denied it despite testimony of witnesses and the facts that the passengers on an incoming bus for which he was to wait missed their connections; also his *signed* Driver's Log which showed that he left 15 minutes before the arrival of the bus for which he was to wait.

in that case that a proven consistent liar was telling the truth on a crucial issue when he .had a paramount personal interest in the outcome, was held to be arbitrary and capricious. The company has here failed to meet the test stated in *Smoky Mountain Stages* as follows:

"In this case we do not think that the Board can make an honest witness of Wells who was so thoroughly discredited and who so tenaciously disregarded his sworn duty and obligation to testify truthfully." (447 F.2d at 929.)

Committed to the Board are the right and duty to resolve questions of credibility of witnesses.[12] Justification for overturning such a finding requires far more objective evidence than a stammering and forgetful witness. We see no reason to disturb this credibility resolution of the Board in the instant case.

■ The company also contends that it was error for the Board to hold a hearing on the issue of McDaniel's status because his status had been previously determined in a representation hearing. Subsequent to McDaniel's discharge, the Board delegated its authority to a Regional Director[13] to hold a representation hearing and determine an appropriate unit. At that hearing McDaniel was presented by the union as a witness, obviously to show that he had not been informed that he was clothed with supervisory powers; also, that he in fact performed no supervisory functions, all of which would support an inference that assistant foremen, as a class, were not supervisors. However,

as shown immediately below, McDaniel's testimony, which was essentially the same as that which he gave at the unfair labor practice hearing, was discredited by the Regional Director:

"I do not give any weight to McDaniel's description of his duties as it bears on the issue of the supervisory status of assistant foreman [sic], as it does not appear from the record that McDaniel was either classified or worked as an assistant foreman until just before leaving the employ of the Employer. I also give no weight to McDaniel's testimony that he had not known assistant foremen to attend supervisory meetings or to make recommendations concerning employees, as it is clear from the record that occasions for his observation of these matters were limited."

No review of the Regional Director's decision to exclude assistant foremen from the unit was sought. The company contends, therefore, that relitigation of the issue of McDaniel's status in the unfair labor practice proceeding is expressly barred by the regulation of the Board, 29 C.F.R. § 102.67(f) which provides in pertinent part:

"The *parties* may, at any time, waive their right to request review. Failure to request review shall preclude such *parties* from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding." (Emphasis added.)

---

12. Dubin-Haskell Lining Corp. v. N.L.R.B., 386 F.2d 306, 308 (4 Cir. 1967), cert. denied 393 U.S. 824, 89 S.Ct. 83, 21 L.Ed.2d 95; N.L.R.B. v. Community Motor Bus Company, 335 F.2d 120, 121 (4 Cir. 1964).

13. § 3(b) of the Act, as amended, 29 U.S.C. § 153(b), 73 Stat. 542 (1959):

. . . The Board is also authorized to delegate to its regional directors its powers under section 159 of this title to determine the unit appropriate for the

purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, . . . except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, . . . .

*See* Magnesium Casting Co. v. N.L.R.B., 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed. 2d 735 (1971).

However, McDaniel was not a "party" at the representation hearing within the purview of the regulation as he had been discharged a month prior thereto. It is true that in the interval between his discharge and the representation hearing the union had filed a charge of an unfair labor practice with respect to McDaniel's discharge but the complaint was not filed by the General Counsel until some months after the representation hearing and one month following the Regional Director's decision.

■ The company asks this court to infer, from the negative language of the Regional Director's findings, a positive finding that McDaniel's status was that of assistant foreman.[14] However, the Regional Director never addressed himself clearly to the question as to whether McDaniel was in fact an assistant foreman. The Director's statement can be construed only as a rejection of McDaniel's qualifications to testify concerning the supervisory powers of assistant foremen.[15]

Upon consideration of the record as a whole we conclude that the order of the Board should be approved.

Enforcement granted.

CRAVEN, Circuit Judge (concurring):

I readily concur, but not on the ground that this case is distinguishable from the credibility problem encountered in NLRB v. Smoky Mountain Stages, 447 F.2d 925 (4th Cir. 1971). I adhere to my belief that *Smoky Mountain Stages* was wrongly decided for the reasons expressed in my dissenting statement in that case, 447 F.2d at 929.

---

14. . . . it does not appear from the record that McDaniel was either classified or worked as an assistant foreman until just before leaving the employ of the Employer.

15. *E. g.*, Riverside Press v. N.L.R.B., 415 F.2d 281 (5 Cir. 1969):

The issue is one of fairness: was the particular point that arises in the unfair labor practice proceeding significant and actually contested at the prior hearing, and was it clearly focused in terms of the issue arising in the later unfair labor practice charge. (415 F. 2d at 284.)