**ROCK HILL TELEPHONE COMPANY, Petitioner,**

v.

**The NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1152.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1979.

Decided Sept. 12, 1979.

**140**

B. H. Boswell, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for petitioner.

Susan S. McDonald, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Atty., N. L. R. B., Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Pursuant to § 10(f) of the National Labor Relations Act (Act), 29 U.S.C. § 160(f), Rock Hill Telephone Company has petitioned this court to review and set aside an order of the National Labor Relations Board. The Board has cross-applied for enforcement of its order. The Board found that the company had violated §§ 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. §§ 158(a)(1) & 158(a)(3), based upon its interrogation of employees; solicitation to engage in surveillance of union activity; threat to discharge troublemakers; and discharge of one employee. We grant enforcement of the Board's order.

Rock Hill Telephone Company (the Company) is engaged in the business of providing residential and business telephone service to the Rock Hill, South Carolina area. In late 1975 or early 1976, Local 3716, Communications Workers of America, AFL–CIO (the Union), initiated a campaign to organize the Company's plant department employees. On April 26, 1976, the Union filed a petition with the Board seeking certification as the bargaining representative for the Company's plant department employees.

On May 13, 1976, a hearing was conducted on the Union's petition. The sole issue in contention at the hearing was the employment status of Frank Peay, for the Company and the Union were otherwise in agreement as to the unit of employees appropriate for the election. The Company contended that Peay was a supervisor within the meaning of § 2(11) of the Act, 29 U.S.C. § 152(11), and therefore should be excluded from the voting unit. The Union contended that Peay's status was one of employee rather than supervisor and therefore he should be included in the voting unit.

On June 2, 1976, the Regional Director issued a Decision and Direction of Election in which he concluded that the Company's plant department employees constituted an appropriate unit and that Frank Peay was a supervisor and therefore should be excluded from the unit. The Union did not file objections to the Regional Director's decision. Pursuant to the June 2 directive, an election was held on June 30, 1976, with the following results: seventeen votes were cast for the Union and fifty-seven votes were cast against the Union.

On July 2, the Union filed timely objections to conduct it alleged affected the results of the election. The Union's objections were essentially as follows: the Company, through its supervisors, made threats of reprisals and promises of benefits to its employees for the purpose of discouraging union affiliation; held a captive audience meeting with its employees in which it made an anti-union speech; and took action that impaired the status of or adversely affected the job or pay of an employee because of that employee's activities on behalf of the Union. On July 30, the Union withdrew all of its election objections save one dealing with the Company's mailing of letters that allegedly contained threats of reprisals and promises of benefits to its employees. This objection was overruled by the Regional Director, who, on August 6, certified that the Union was not the exclusive bargaining representative for the Company's plant department employees.

On August 23, 1976, Frank Peay was discharged by the Company. Soon thereafter, on September 7, the Union filed a charge with the Board against the Company, alleging that the Company had engaged in an unfair labor practice within the meaning of §§ 8(a)(1) and (3) of the Act by firing Peay because of his union activity. The Union also alleged that by other unspecified acts the Company had interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in § 7 of the Act.

On November 15, 1976, the Regional Director issued a complaint alleging that the Company had violated §§ 8(a)(1) and (3) of the Act by discharging Peay for his union activity and by subjecting Peay to interrogation, through its supervisors, concerning his union activity. At the start of the unfair labor practice hearing on the above charges, on February 14, 1977, the General Counsel moved to amend the complaint to include allegations of additional § 8(a)(1) violations revolving around the interrogation and threatening of two of the Company's employees, Clyde Polk and C. Edgar Howell. The Company objected to the amendments as not being within the six

month limitation period set forth in § 10(b) of the Act, 29 U.S.C. § 160(b). Despite the Company's objections, the administrative law judge (ALJ) granted the General Counsel's motion to amend the complaint. Consequently, all of the issues raised in the complaint, as amended, were fully litigated at the hearing.

I

The Board concluded that the Company had violated § 8(a)(1) of the Act, through the actions of its supervisors toward employees Polk, Howell, and Peay.

To a large extent, the § 8(a)(1) violations were premised upon credibility resolutions made by the ALJ and by his findings as to the weight of the evidence. We sustain them as to employees Howell and Peay, they being supported by substantial evidence. As to the employee Polk, the ALJ found (adopted by the Board) that a supervisor had requested Polk to furnish him with a list of employees who would vote for or against the union. This finding is not supported by substantial evidence, although there was evidence that a supervisor did ask Polk how he thought his department would go in the election, or some such language, which the ALJ did not find, as the Board did not. Were the case to turn on the finding as to Polk, we would have to decline to enforce the Board's order. But only a small part of the cease and desist order, see part 1(b) App. p. 27, and para. 5 of the notice, p. 29, could depend on the finding as to Polk, and even that is not clear from its language for it might depend on interrogation of Howell by Armstrong. Because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based, *S. E. C. v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943), the Board will modify its cease and desist order to indicate clearly it is not based on the interrogation of Polk by Workman.

We also think the finding of the ALJ and the Board that Peay was an employee as contrasted to a supervisor at the time he

was fired, and the reasons found for his firing, are supported by substantial evidence. So, with the exception noted, we affirm the factual underpinning of both the § 8(a)(1) and 8(a)(3) violations.

## II

The Company's primary objection to the Board's determination that it violated § 8(a)(1) is that a large part of the alleged conduct took place before the six month limitation period contained in § 10(b) and therefore the alleged conduct was not properly before the Board. It was partially on this basis that the Company opposed the General Counsel's motion to amend the complaint to include these allegations. We believe the objection is without merit.

The Union's charge and the original complaint, which admittedly come within the six month limitation period set forth in § 10(b), alleged that the Company violated §§ 8(a)(1) and (3) of the Act by discriminating against Frank Peay because of his involvement in an organizing campaign conducted by the Union among the Company's plant department employees. The amended § 8(a)(1) allegations also revolve around the organizing campaign conducted by the Union. It is established that if additional allegations are closely related or sufficiently related to allegations contained in the charge or original complaint, § 10(b) will not be violated by allowing the complaint to be amended to include additional allegations even though the amendment takes place after the limitation period set forth in § 10(b). E. g., *NLRB v. Jack La Lanne Management Corp.*, 539 F.2d 292, 294–95 (2d Cir. 1976). Since all of the allegations in this case concern the Company's response to the Union's organizing effort, we think there was sufficient relation between the charge and the original complaint and the additional § 8(a)(1) allegations to permit the amendment of the complaint to include the additional allegations without violating § 10(b). We also note the Company declined a continuance for it to prepare a defense and tried the case on the merits, so there is little room to argue actual prejudice occurred.

Along a similar line, the Company contends that it was error to permit the amendment of the complaint to include the additional § 8(a)(1) allegations since all but one of the allegations concerned pre-election conduct. The Company asserts that since the Union filed and then withdrew objections to the election based on alleged pre-election misconduct on the part of the Company, the Union waived its right to assert that such conduct violated the Act. We find no merit in the Company's contention.

The fact that the Union withdrew its election objections should not preclude it from later filing an unfair labor practice charge based on similar or the same conduct that formed the basis of the withdrawn election objections. See *NLRB v. T. W. Phillips Gas & Oil Co.*, 141 F.2d 304, 305 (3d Cir. 1944). We are of opinion that, although a withdrawal of objections to an election might foreclose the moving party from having the election results set aside, and although the fact of the withdrawal of the objections to an election may be considered as an item of evidence in the unfair labor practice proceeding, it does not necessarily preclude that same party from bringing an unfair labor practice charge based on the same objectionable conduct and receiving other relief. The statute provides for relief from unfair labor practices which should not necessarily be extinguished by withdrawal of objections to an intervening election.

## III

The Board permitted the relitigation of Peay's employment status with the Company. As previously noted, as a result of the representation hearing held on May 13, 1976, the Regional Director determined that Peay was a supervisor. In order for the Company to have violated §§ 8(a)(1) and (3) because of its conduct toward Peay, it was necessary for Peay's employment status to be relitigated and for it to be determined that he was an employee rather than a supervisor at the time of the alleged mis-

conduct since § 8 of the Act applies to "employees" and not "supervisors." See *NLRB v. Southern Seating Co.*, 468 F.2d 1345, 1346 (4th Cir. 1972).

The facts surrounding the issue of Peay's employment status follow. Beginning in 1968, Peay was employed by the Company as an installer-repairman. On May 10, 1976, Peay was transferred to the Company's test board and remained in that position until his discharge on August 23, 1976. As a result of the representation hearing conducted on May 13, 1976, the Regional Director concluded that based upon Peay's duties as an installer-repairman, he was a supervisor. No mention, in the Regional Director's finding, was made of the fact that Peay had been transferred to the test board on May 10, the Regional Director apparently not being aware of that occurrence. Upon the relitigation of Peay's employment status, the Board agreed with the Regional Director that Peay was a supervisor while he was employed as an installer-repairman. However, the Board concluded that based upon Peay's duties on the test board, from May 10, the date he was transferred to the test board, until August 23, the date of his discharge, Peay was an employee as contrasted to a supervisor and thus covered by § 8 of the Act. Consequently, the Board found that the Company had violated § 8(a)(1) by interrogating Peay in August as to union matters, as well as § 8(a)(3) by firing him for union activity.

█ The Company contends that the matter of Peay's employment status was *res judicata* and, in light of Board regulation 29 C.F.R. § 102.67(f), the Board erred in relitigating Peay's employment status. We disagree.

Board regulation 29 C.F.R. § 102.67(f) sets out the penalty for failing to request or obtain review of a representation proceeding.[1] It provides:

"The parties may, at any time, waive their right to request review. Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding.

The circuit courts that have considered the issue are of opinion that § 102.67(f) does not prevent the relitigation in a subsequent § 8(a)(1) or § 8(a)(3) unfair labor practice proceeding of issues that were or could have been raised in a representation proceeding. *Heights Funeral Home, Inc. v. NLRB*, 385 F.2d 879 (5th Cir. 1967); *Amalgamated Clothing Workers of America v. NLRB*, 124 U.S.App.D.C. 365, 365 F.2d 898 (D.C.Cir. 1966). See *Riverside Press, Inc. v. NLRB*, 415 F.2d 281, 284 (5th Cir. 1969), *cert. den.*, 397 U.S. 912, 90 S.Ct. 915, 25 L.Ed.2d 94. See generally e. g., *NLRB v. W. S. Hatch Co.*, 474 F.2d 558, 563 n. 4 (9th Cir. 1973); *NLRB v. Union Brothers, Inc.*, 403 F.2d 883, 887 n. 8 (4th Cir. 1968). The phrase "any related subsequent unfair labor practice proceeding" contained in § 102.67(f) has been interpreted to relate only to § 8(a)(5) refusal to bargain cases. See *Heights Funeral Home* and *Amalgamated Clothing Workers*, supra. And, although the Board, as it acknowledges, has not always been consistent in its interpretation and application of § 102.67(f), it has recently adopted the position set forth in *Heights Funeral Home* and *Amalgamated Clothing Workers* that § 102.67(f) does not necessarily bar the relitigation of issues in subsequent unfair labor practice proceedings other than § 8(a)(5) proceedings. See *Serv-U-Stores, Inc.*, 234 NLRB No. 191; 1978 CCH NLRB ¶ 19,054. We agree with this interpretation of § 102.67(f). Consequently, it was permissible for the Board to relitigate the employment status of Peay.

---

1. As previously noted, the Union did not file objections to the Regional Director's decision that Peay was a supervisor.

Considering the Company's other objections to enforcement to be without merit, and that the position of the Board is in general well founded, we will enforce its order as modified.

*ENFORCEMENT GRANTED AS MODIFIED.*