NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TIO PEPE, INC., Respondent.

No. 79–1442.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1980.

Decided Sept. 4, 1980.

Barbara Kraft, N.L.R.B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Andrew F. Tranovich, Washington, D. C., on brief), for petitioner.

Warren M. Davison, Washington, D. C. (Earle K. Shawe, Eric Hemmendinger, Shawe & Rosenthal, Baltimore, Md., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The Board seeks enforcement of its order finding that the respondent, the operator of a popular and luxury Spanish restaurant in Baltimore, Maryland, had violated Section 8(a)(5) and (1) of the National Labor Relations Act by failing to bargain with the Union, which the Board had certified as the bargaining agent of the kitchen and dining room employees of the respondent following a representation election. The respondent admitted its refusal to bargain but asserted, as an affirmative defense, the invalidity of the certification.

The certification proceedings, the validity of which is the critical issue here, began with the filing of a representation petition by the Union.[1] The Regional Director, after an investigation, determined that the appropriate bargaining unit consisted of "all kitchen and dining room employees" of the respondent and directed the holding of a representation election by the members of the bargaining unit. Over the objection of the respondent, the Regional Director had included the captains, or "redcoats" as the respondent described them, who were employed in the dining room, eligible to vote in the representation election. It was the respondent's position that the captains were supervisors and were ineligible to be members of the bargaining unit. The respondent sought review by the Board of the decision by the Regional Director to include the captains in the bargaining unit. The Board granted review. Without awaiting the result of that review, the Regional Director proceeded with the election, but impounded the votes of the captains pending resolution by the Board of their eligibility to vote. Later the Board sustained the ruling of the Regional Director on the eligibility of the captains to participate in the election as members of the bargaining unit. In sustaining the Regional Director, the Board made findings of fact and conclusions of law.[2]

---

1. The Union is the Bartenders, Hotel, Restaurant and Cafeteria Employees Union, Local 36, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO.

2. 242 NLRB No. 98.

In his factual findings the Regional Director described the restaurant as consisting of eight rooms, each containing four to six tables. Customers of the restaurant are greeted either by Perez, one of the owners, or by Lobo, the maitre d', and assigned a table. Each room is serviced by a team composed of a captain, a waiter and a busboy. The captain normally takes the customer's order, serves the drinks, if any are ordered, presents the check at the conclusion of the meal, and collects payment of the check and the tip. The principal duties of the waiter are to bring the meal from the kitchen, serve it at the table and set tables when necessary. The busboys are concerned with clearing the tables when the meal is completed and resetting the table with clean linen, dishes and cutlery. The captains are in general in charge of their rooms and, if necessary, will assist the waiters in serving the meal. They do not, however, have the right to discipline or discharge a waiter or busboy. They may report any member of their team who is failing to perform satisfactorily to Perez or Lobo, with their recommendation, but only Perez or Lobo has the authority to fire or discipline. Moreover, all hiring in the dining room is under the control of either Perez or Lobo. All the members of a team are paid the same minimum wage of $1.90 per hour but this is a minor part of the earnings of each employee. The primary source of compensation for all employees in the dining room unit is the tips given by the customers. These tips are considerable. They are always collected by the captains. At the end of each day the tips are pooled and are then divided among the captains, waiters and busboys in the ratio of 4–2–1 or 57 percent to the captains, 29 percent to the waiters, and 14 percent to the busboys. This distribution of the tips, it was testified without contradiction, was determined by the captains and *only* the captains had au-

thority to change it.[3] The ratio used for the distribution was said to be general in the industry and had been the ratio followed by the employees since the restaurant opened.

On these facts, the Regional Director held that, contrary to respondent's contention, the captains were not "supervisors" under the Act but "function[ed] more in the capacity of leadmen." He reached this conclusion primarily because "the captain can do nothing more than report to Lobo or Perez that an employee is performing improperly and then Lobo or Perez may or may not take action in regard to the complaint–of conduct." In arriving at his conclusion, the Regional Director made no mention, and apparently gave no consideration to the fact that, under the undisputed evidence of Perez, the captains had the power to fix the real compensation of the waiters and busboys through their control over the distribution of the tips. It was this failure "to consider record evidence establishing that such captains control the compensation received by other dining room personnel" in resolving the issue of whether the captains were supervisors that the respondent particularly complained of in its petition for review as filed with the Board.

After the election, but before the Board had ruled on the respondent's objection to the Regional Director's inclusion of the captains in the bargaining unit, the respondent filed timely objections to the fairness in the conduct of the election. It its initial decision, the Board restricted itself to a review of the Regional Director's determination that the captains were not supervisors under the Act. It dismissed the respondent's claim that such employees were supervisors with this language:

"Further, we find no merit in the Employer's contention that its service captains effectively control compensation of

---

**3.** The Board, in its initial decision, discounted the importance of the original determination on the method of distributing the tips. It said that the original method followed the "traditional" manner of distribution. Perez did testify that he assumed the method of distribution was the one commonly followed in similar restaurants.

In so testifying, he professed a lack of familiarity with the system followed in other restaurants. The only decided case involving a similar type of restaurant, though, followed an entirely different pattern of distribution. *See N.L.R.B. v. Brennan's, Inc.*, (5th Cir. 1966) 366 F.2d 560, 562, n. 2.

team members by controlling the amount and manner of distribution of tips. Although Perez testified that service captains have the authority to alter the formula by which tips are distributed, there is no evidence that any of the Employer's captains has been informed that he has such authority, or that any captain has in fact exercised it. In these circumstances, we adopt the Regional Director's conclusion that captains are not supervisors."

It then remanded the case to the Regional Director and, by an amended order, directed him to open and count the impounded ballots in the election and to prepare and serve on the parties "a tally of ballots and issue an appropriate certification based thereon." Some months later, the Board issued a "Supplemental Decision," dismissing the respondent's objections to the election and certifying the petitioning Union as the exclusive bargaining agent of the employees in the bargaining unit.

Despite the Board's certification the respondent refused to bargain with the Union. The Regional Director thereupon issued a complaint charging an unfair labor practice against the respondent for refusing to bargain. The respondent answered, admitting the refusal to bargain but denying that the Union was properly certified. While a motion for summary judgment filed by the Regional Director was pending, the respondent filed its motion to reopen the record and for leave to submit newly discovered evidence. It supported the motion with an affidavit of Perez and written statements from waiters and busboys. Asserting that the facts set forth in the attachments raised "genuine and material factual issues," the respondent asked that the Board hold "a hearing in order to reconsider the representation proceeding."

The facts, as set forth in the attachments to respondent's motion to reopen, were that certain of the captains, in an effort to enlist the support for the Union of the waiters and the busboys in the representation election, had promised the waiters and busboys that they (the captains) would revise the manner of distributing the tips to the advantage of the waiters and busboys, and, that, after the election, the captains had fulfilled their promise to change the split of tips at dinner by increasing the share of the waiters and busboys but had reduced the share of the waiters and busboys in the lunch tips, thereby creating a "new controversy, currently unresolved." It was the respondent's position that this evidence, if accepted at a reopened hearing, would both refute entirely the factual basis for the Board's conclusion that the captains were not supervisors and show the invalidity of the election itself since "the captains, * * * solicited for the Union by making promises of increased compensation to waiters and busboys." The Board denied the motion. It found, first, that the evidence offered by the respondent did not "add any meaningful indicia of the supervisory status to the captains" since it was "clear that Perez [had] simply called the dining room employees together on March 3, 1979, and thereby orchestrated whatever change that was made in the tips. Consequently the criterion eluded [sic] to in the aforementioned Decision on Review has not been met." The Board likewise found no merit in the claim of unfairness in the election, as set forth in the motion to reopen, saying:

> "It is quite possible for one employee to 'promise' another added benefits if the Union wins. The ability to make the promise in no way demonstrates that the employee had the power to carry it out."

It accordingly found the respondent had violated the Act and directed the respondent to take certain remedial action. It is this order which the Board asks that we enforce.

The first question to be addressed is whether the Board should have granted an evidentiary hearing on the respondent's motion to reopen for newly discovered evidence either on the issue of the status of the captains or on the issue of the fairness of the election. If respondent is entitled to a reopening of the proceeding and to an evidentiary hearing on either issue, it would be premature to consider enforcement of the Board's order until after the evidentiary hearing has been had, a complete record has

been made, and the Board has rendered its decision on the new record. For the reasons hereafter set forth we are of the opinion that the respondent was entitled to an evidentiary hearing. The petition for enforcement at this time is accordingly denied and the proceedings are remanded for further proceedings by the Board as directed herein.

■ This court will not remand a representation proceeding such as this to the Board for an evidentiary hearing on allegedly newly discovered evidence, (a) unless the movant has made a proffer of specific, as distinguished from conclusory, *prima facie* evidence on "substantial and material factual issues" of fact which, if resolved in the movant's favor, would require setting aside the representation election, and (b) unless it has shown some justification for its failure to proffer earlier such evidence. *Newport News Shipbuilding & Dry Dock v. N. L. R. B.*, (4th Cir. 1979) 608 F.2d 108, 111; *N. L. R. B. v. Hale Manufacturing Co.*, (2d Cir. 1979) 602 F.2d 244, 248; *N. L. R. B. v. Process & Pollution Control Co.*, (10th Cir. 1978) 588 F.2d 786, 790–91; *N. L. R. B. v. Magnesium Casting Co.*, (1st Cir. 1970) 427 F.2d 114, 118, *aff'd.*, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed. 735 (1971). On the other hand, "the Board does not have discretion to deny a hearing (on a motion to remand) to a losing party who has supplied *prima facie* evidence raising substantial and material issues that would warrant setting the election aside." *Gulf Coast Automotive Warehouse v. N. L. R. B.*, (5th Cir. 1979) 588 F.2d 1096, 1100. The critical issue here thus is whether the respondent has made such a *prima facie* showing in this case.

The Board, in its decision, though it found that the respondent had not made the requisite showing for a remand for an evidentiary hearing, recognized the controlling standard for determining the right of a respondent in a representation proceeding for remand for an evidentiary hearing in accordance with the rule stated above. It assumed the timeliness of respondent's motion [4] and rested its decision to deny the motion on the ground that "the new evidence [did] not contribute materially to that previously considered in the representation proceeding and therefore offers no reason for reopening the record therein." In an exposition of its reasons for this conclusion, it first said, in connection with the issue of the supervisory status of the captains, that "the new evidence adds [no] meaningful indicia of the supervisory status to the captains" to those considered by the Board in its earlier decision. Secondly, with reference to the charge of improper conduct on the part of the captains during the election process, it declared that, if the evidence suggests that the captains, as adherents of the Union, promised the other dining room employees "added benefits if the Union wins" in order to induce support for the Union in the representation election and thereby injected prejudicial unfairness in the representation election, it was insufficient to invalidate the election since "[t]he ability to make a promise [of added benefits] in no way demonstrates that the [captains] had the power to carry it out," especially since "on the employees [sic] own evidence, the tips were not changed until Respondent took action." We find neither reason convincing.

We consider first whether the respondent's *prima facie* showing presented new evidence which was material to the supervisory status of the captains and which, if sustained after a hearing, would require a finding that the captains were supervisors. The importance of the determination of the status of the captains is that if the captains were supervisors under respondent's *prima facie* showing, their participation in support of the Union in the activities preceding the election would require setting aside the

---

4. The Board, in its brief in this court, has argued at some length the timeliness issue but it is settled that an order of the Board is not to be affirmed on a point not "discussed in the Board's opinion nor asserted as a controlling factor" in its decision. *Local Union No. 103,* etc. v. N. L. R. B., (D.C. Cir. 1976) 535 F.2d 87, 88, n. 2, *reversed on other grounds,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978). Since the timeliness was not "a controlling factor" in the Board's denial of the motion, it is not noticed by us on this appeal.

election, *Turner's Express, Incorporated v. N. L. R. B.*, (4th Cir. 1972) 456 F.2d 289, 292, and an evidentiary hearing would be warranted. To resolve this issue it is necessary to identify the proper indicia for identifying supervisors under the Act and to ascertain whether respondent's *prima facie* showing meets such indicia.

Among the several "indicia" of a supervisory status as enumerated in the Act itself is the "authority, in the interest of the employer, to . . . reward . . . other employees . . . ." 29 U.S.C. § 152(11). It has often been stated that if an employee either exercises, or possesses the authority to exercise, any one of the enumerated functions listed in the statute, such as the authority "to . . . reward . . . other employees," that fact is sufficient to qualify such employee as a supervisor, since Congress, in stating the "indicia" for a supervisor, did so "disjunctively." There is, however, this qualification to that statement: it must be fairly said that the alleged supervisor knew of his authority to exercise the authority identified in the statute as conferring the status of supervisor. *N. L. R. B. v. Southern Seating Company*, (4th Cir. 1972) 468 F.2d 1345, 1347; *N. L. R. B. v. Harmon Industries, Inc.*, (8th Cir. 1977) 565 F.2d 1047, 1049; *Global Marine Dev. of Cal., Inc. v. N. L. R. B.*, (9th Cir. 1975) 528 F.2d 92, 94, *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 83 (1976). This qualification was made clear in *N. L. R. B. v. Southern Seating Co.*, 468 F.2d at 1347:

> "The company correctly argues that it is not the exercise of authority, but the delegation of authority, which is indicative of the attributes of a supervisor. However, we think it may fairly be added that an employee must be informed of such delegation of authority to act in a manner reserved to those in supervisory positions."

The respondent contended that it had established that the captains met the criteria of supervisors. It had said in its initial objection to the inclusion of the captains in the bargaining unit, as we have observed, that the captains had fixed the earnings of the waiters and busboys by the exercise of their control over the manner of distributing the tips. The Board had overruled the contention because, as we have already pointed out, it found that the captains, if they had such power, did not know that they had such power and had never exercised it. By its motion to reopen on the basis of new after–discovered evidence the respondent, however, would rebut and contradict the precise reasons marshalled by the Board for denying to the captains supervisory status. Such rebuttal evidence is represented by the action of the captains in revising the distribution of the tips to the advantage of the waiters and busboys at dinner and to their disadvantage at lunch after the election. This evidence, the respondent asserts, demonstrates (1) that the changed distribution of tips did not follow what the Board describes as the "traditional pattern," (2) that the captains knew they had the authority to revise the distribution of the tips, and (3) that they had, by the change made by them in that distribution, actually exercised the authority to change the distribution. This action took place after the representation hearing and after the Board had entered its initial decision finding that the captains were not supervisors. The respondent contends that evidence of that action qualifies as new evidence not theretofore available. Since the evidence rebuts the very facts on which the Board rested its decision on supervisory status, the respondent posits that such evidence is material and, if believed, could require a different result in the determination of the status of the captains.

The Board, however, dismissed what the respondent claimed to be material new evidence undermining the basis of the Board's decision on supervisory status because "we are not persuaded that the new evidence adds any meaningful indicia of the supervisory status to the captains," adding, as a basis for that conclusion, that "[i]t is clear that Perez simply called the dining room employees together on March 3, 1979, and thereby orchestrated whatever change that was made in the tips. Consequently, the

criterion eluded (sic) to in the aforementioned Decision on Review has not been met." It is freely admitted by the respondent that Perez called a meeting of the dining room employees. He did so because a controversy had arisen among those employees: the waiters and busboys were claiming that the captains were "reneging" on a promise made to them in order to induce their support of the Union that the captains would change this distribution of tips in their favor. Unquestionably, it was in the respondent's interest that this controversy be resolved. If the dispute were not resolved, it was likely that working relationships would deteriorate to the prejudice of service to the guests of the restaurant. It was not unnatural in these circumstances for the respondent to have called a meeting of the employees concerned in the hope that the dispute might be resolved between them. But the respondent asserted no right of its own to make an adjustment in the distribution of the tips; it conceded, it would seem, that this right rested entirely with the captains. And the showing made by the respondent was that the changes made in the formula of distribution were "orchestrated" by the captains and not by the respondent. Certainly, it is unlikely that the respondent would have made a difference in the distributive pattern based on whether the tips were received for service at lunch or at dinner. It is obvious, on the other hand, that the captains so fashioned the change as to have the least possible effect on their own earnings. All of this fits in with the contention of the respondent that the captains knew they had control over the distribution of tips, that

they had prior to the election promised to change the method of distribution, and that, on the occasion in question, they exercised it.

It may well be that, at a full hearing, it will be established that the facts are not as presented in the respondent's *prima facie* showing and that, as the Board apparently surmises, the respondent's participation in the change was greater than now appears. But we are only concerned at this stage in determining whether the respondent made a sufficient *prima facie* factual showing of after–discovered evidence, which, if sustained later at a full hearing, would undermine the reasons assigned by the Board for its denial of supervisory status for the captains. *See Newport News Shipbuilding & Dry Dock v. N. L. R. B.*, 608 F.2d 108; *N. L. R. B. v. Hale Manufacturing Co.*, 602 F.2d 244. So limited in our considerations, we conclude that the Board should have accorded the respondent an evidentiary hearing on the showing of newly discovered evidence relating to the captains' supervisory status.[5]

There is, however, another and a more compelling reason for an evidentiary hearing on the newly discovered evidence submitted by the respondent. The *prima facie* showing made by the respondent was very clear that certain of the captains had promised the waiters and the busboys that, if the Union won, the distribution of tips would be adjusted in favor of the waiters and the busboys. It is the position of the respondent that it was within the captains' power and authority to satisfy this promise, and that the waiters and busboys had a right

5. *N. L. R. B. v. Brennan's, Inc.*, 366 F.2d 560 (5th Cir. 1966) has some similarity to the issue of the supervisory status of captains in this case but on its facts it is easily distinguishable. In that case, the restaurant operated much the same as that of the respondent. Each of its dining rooms was serviced by a crew consisting of a captain, wearing, as here, a red coat, and waiters. The captain was "in general charge of his team and [was] responsible for the proper discharge of their duties." The captain received a fixed sum of $5 per day and the waiters $3 but "*all three split the tips evenly, which are their principal source of income.*" (Italics added.) The Court found that the captains in

that situation were "comparable to a group leader or gang pusher in industrial type organizations and [they are] not a supervisor within the meaning of the NLRA." 366 F.2d at 562, n. 2. It is to be noted, though, that, so far as their principal source of income, the captains were treated the same as the other employees, whereas in this case the captains receive twice the share of the waiters and busboys. Also, the captains in that case had no authority and claimed no authority over fixing the distribution of the tips, which is the basis on which the claim of supervisory status is rested in this case, and this is the critical difference between that case and this case.

reasonably to assume that this was so. Certainly, there is no statement in the record that this was not the situation and Perez, in his affidavit, had said that the captains had such power. But, whether the captains had the power or not, it would seem obvious that, if they agreed, their share of the tips could and would be reduced, since admittedly the captains made the actual distribution. This would be true because only the dining room employees–not the respondent–had any interest in the formula for the distribution of the tips as between the various classifications of dining room employees. *Cf., Stop & Shop Companies, Inc., Etc., v. N. L. R. B.,* (1st Cir. 1977) 548 F.2d 17, 19. This power of the captains to prevent any change in the distribution of the tips without their approval is little or no different from the power to fix the distribution, and this power, it would seem, the captains clearly had. If the captains promised to exercise that power to reduce their own share of the tips in favor of the waiters and busboys in order to induce support for the Union in the representation election, as the statements of the waiters and busboys attached to the respondent's motion to reopen state, that would have represented an offer of financial benefit for Union support and would have significantly impaired the fairness of the election, requiring that it be set aside. *N. L. R. B. v. Savair Mfg. Co.,* (1973) 414 U.S. 270, 278–79, n. 6, 94 S.Ct. 495, 499–500, 38 L.Ed.2d 495; *N. L. R. B. v. Aladdin Hotel Corp.,* (9th Cir. 1978) 584 F.2d 891, 893.

The Board dismissed the significance of these statements by the waiters and busboys that the captains had promised them increases in the division of tips in order to enlist such employees on the Union's side in the election on this ground:

"It is quite possible for one employee to 'promise' another added benefits if the Union wins. The ability to make the promise in no way demonstrates that the employee had the power to carry it out."

This reasoning would be applicable to the ordinary case and has been often applied in those circumstances. *Hecla Min. Co. v. N. L. R. B.,* (9th Cir. 1977) 564 F.2d 309, 315; *N. L. R. B. v. Basic Wire Products, Inc.,* (6th Cir. 1975) 516 F.2d 261, 264. It is, as one court has observed, "indigenous to any representation election" that Unions will promise that they will secure higher wages for the employees but everyone knows that the Union has no *per se* control over the wages of the employees and that this is no more than a promise to work for higher wages if the Union prevails. *N. L. R. B. v. Sauk Valley Manufacturing Co., Inc.,* (9th Cir. 1973) 486 F.2d 1127, 1131.[6] In this case, however, the critical difference is that the captains did have the power to effectuate their promise by reducing their own share of the tips. Assuming then that the respondent's evidence is correct that the captains made such a promise, it was far more than an expression of hope, it was a promise within the power of the captains, and one the waiters and the busboys could well be influenced by, since they knew the captains could perform. When such a promise is proved, it is not necessary to prove specifically that such promise affected the result of the representation election; prejudice will be presumed. *Turner's Express, Incorporated v. N. L. R. B.,* 456 F.2d at 292.

Without further laboring the point, we are of the opinion that the respondent did make a sufficient showing of specific facts, having a material and substantial bearing on the fairness and validity of the representation election and facts which, if established at the evidentiary hearing, might have led to a different result. The

---

6. *See N. L. R. B. v. Sumter Plywood Corp.,* (5th Cir. 1976) 535 F.2d 917, 923, *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977), where the court said:

"When it should be obvious to reasonable minds that the Union had no power to deliver the special benefits, there is no reason to believe .that the promise affected the election."

However, where the promise relates to something over which the Union does have control, such as initiation fees, the rule is different. *N. L. R. B. v. Savair Mfg. Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495.

Board should have reopened the proceeding and accorded the respondent an evidentiary hearing on that issue raised by the respondent's showing in support of its motion to reopen.

The petition of the Board for enforcement of its order is therefore denied and the cause is remanded to the Board for an evidentiary hearing on the two issues advanced by the respondent in its motion to reopen.